ON REMAND FROM THE SUPREME COURT OF FLORIDA

DAVIS, Judge.
This matter is before us on remand from the Florida Supreme Court. The issue is the constitutionality of the City of Tampa’s juvenile curfew ordinance. In the initial appeal, we had upheld the ordinance under a heightened scrutiny test. The Florida Supreme Court reversed and remanded for us to consider the ordinance under a strict scrutiny standard. We hold the ordinance unconstitutional under this test.
J.P., a child, challenges the trial court’s order adjudicating him delinquent and committing him to the Department of Juvenile Justice. He argues that the juvenile curfew ordinance of the City of Tampa is unconstitutional and that his adjudication of delinquency based on a violation of that ordinance must be overturned.
J.P. was taken into custody at 2:05 a.m. on December 7,1996, while riding his bicycle on the streets of Tampa. The State filed a petition for delinquency charging J.P. with a violation of the city’s curfew ordinance. J.P. moved to have the curfew ordinance declared unconstitutional. The trial court denied the motion but agreed that the motion was dispositive. J.P. then pleaded no contest to the petition, reserving his right to appeal the trial court’s ruling on his motion.
On direct appeal, this court affirmed. Citing State v. T.M., 761 So.2d 1140 (Fla. 2d DCA 2000), quashed, 784 So.2d 442 (Fla.2001), we concluded that the constitutionality of the Tampa ordinance should be measured by a heightened scrutiny test. Deciding that the ordinance was substantially related to an important government interest, we determined that the ordinance was constitutional and affirmed the trial court’s decision. However, in doing so, we certified two questions to the Florida Supreme Court as being of great public importance:
(1) WHAT LEVEL OF SCRUTINY MUST A COURT APPLY WHEN REVIEWING THE CONSTITU *112 TIONALITY OF A JUVENILE CURFEW ORDINANCE?
(2) WHETHER THE TAMPA JUVENILE CURFEW ORDINANCE IS CONSTITUTIONAL?
J.P. v. State, 775 So.2d 324, 325 (Fla. 2d DCA 2000), quashed, J.P. v. State, 788 So.2d 953 (Fla.2001).
On review, the Florida Supreme Court answered the first of our questions by concluding that the proper standard of review of a juvenile curfew ordinance is strict scrutiny. See J.P. v. State, 788 So.2d 953 (Fla.2001).[1] Without addressing the second question, the supreme court remanded the matter back to this court to apply the strict scrutiny test to the ordinance.
For the ordinance to withstand the strict scrutiny test, the city must have a compelling government interest in regulating the activities of minors during the hours of the curfew and the ordinance must be narrowly tailored to accomplish its goals by the least intrusive means available. See In Re T.W., 551 So.2d 1186 (Fla.1989); Qutb v. Strauss, 11 F.3d 488 (5th Cir.1993). We conclude that although the city may have a compelling governmental interest in controlling the whereabouts of juveniles during the late night hours, this ordinance is not drafted narrowly enough to meet this strict scrutiny test.
To be narrowly tailored, there must be some “nexus” between the governmental interest and the classification created by the ordinance. Qutb, 11 F.3d at 493. Additionally, the ordinance must ensure that the broad curfew coverage minimizes any burden on the minor’s fundamental rights. Nunez v. City of San Diego, 114 F.3d 935 (9th Cir.1997). In this respect, the exemptions or defenses to application of the ordinance “are the most important consideration in determining whether this ordinance is narrowly tailored.” Qutb, 11 F.3d at 493-94. Accordingly, we must look to see if the need for the ordinance as demonstrated by the city, supports the limitations on the minors’ rights and whether the exemptions are sufficiently broad to protect innocent, legitimate activities of juveniles.
The Tampa ordinance prohibits a person under the age of seventeen from being in public or semi-public places in the City of Tampa during curfew hours. As defined by the ordinance, from Sunday through Thursday the curfew begins at 11:00 p.m. and continues until 6:00 a.m. On Saturdays and Sundays, the curfew is in effect from 12:00 a.m. until 6:00 a.m. The ordinance does allow for certain exceptions. The curfew does not apply when the minor is accompanied by a parent or is on an errand for a parent with a written note from the parent. Additionally, attendance at certain functions that are either sponsored by school or religious groups or are involved in the exercise of First Amendment rights is exempt. The ordinance provides that as a penalty, a juvenile found to be in violation may be adjudicated a delinquent child and may be supervised by or committed to the Department of Juvenile Justice for a period not to exceed six months.[2]
In Qutb, the federal appellate court upheld the constitutionality of a Dallas, Texas, curfew that was comparable to the Tampa ordinance in that it applied to those under seventeen years of age and ineorpo- *113 rated the same time limitations and scope. Although the exceptions were also similar, the Dallas ordinance also excepted minors running errands for a parent or guardian without requiring a written statement from the parent, as the Tampa ordinance requires. Additionally, the penalty provision only provided for the imposition of a fine.
The appellate court in Qutb applied the strict scrutiny test and concluded that the ordinance was directly responsive to the need identified by the city council and that it was narrowly drafted. In doing so, the court concluded that when balanced with the “compelling interest sought to be addressed,” the imposition on the rights of the juveniles was “minor.” Qutb, 11 F.3d at 495. In reaching that conclusion, however, the court recited the statistical data that was presented to the trial court indicating the city’s need to impose such a curfew. This data demonstrated that juvenile crime increased proportionally with age between ten and sixteen years of age, that violent crimes were most likely to occur between 10:00 p.m. and 1:00 a.m., and that the frequency of violent crimes occurring on the public streets and highways was significantly high. It also showed the frequency of juveniles being charged with crimes of violence. The court concluded that these statistics demonstrated that the ordinance met the state’s compelling interest.
By contrast, in the instant case, the State failed to present any statistical data to the trial court in support of the need for the Tampa ordinance.[3] Although we may find that there is a compelling state interest generally in the protection of juveniles from victimization and in reducing juvenile crime, we must strictly measure the exceptions against such a generalized finding to determine if the ordinance is narrowly tailored:
The curfew ordinance of San Diego was found to fail the strict scrutiny test by the Ninth Circuit Court of Appeals in Nunez, 114 F.3d 935. That ordinance was also similar to the Tampa ordinance, including the imposition of criminal sanctions for violations. In that case, the City also provided some statistical evidence to show that a curfew would help reduce crime. However, the court found that the City failed to show that the juvenile curfew was a particularly effective means in achieving the desired reduction. Id. at 948. In reviewing the exceptions, the court concluded that the ordinance was not narrowly tailored.
Its present ordinance is problematic because it does not provide exceptions for many legitimate activities, with or without parental permission. This is true even when minors may be uniquely vulnerable at night; the curfew’s blanket coverage restricts participation in, and travel to or from, many legitimate recreational activities, even those that may not expose their special vulnerability.... We therefore conclude that the City has not shown that the curfew is a close fit to the problem of juvenile crime and victimization because the curfew sweeps broadly, with few exceptions for otherwise legitimate activity.

Id.

We conclude that the reasoning of Nunez demonstrates that the Tampa ordinance does not meet the strict scrutiny test.[4] The State concedes that the penalty *114 clause does- not pass strict scrutiny. The State points to the model ordinance enacted by the ■ Florida ■ Legislature that attempts to address the same compelling governmental interest. See §§ 877.20-25, Fla. Stat. (2000). This model ordinance imposes only a civil infraction fine of fifty dollars for the second and subsequent violations. Although we are not in any way passing on the constitutionality of the model ordinance, it is apparent that the Tampa ordinance does not use the least intrusive means to accomplish its purpose when the model ordinance accomplishes the same goal with only a 'civil penalty. The State requests that we sever the pénalty paragraph of the ordinance, arguing that the remainder of the ordinance satisfactorily meets the test. However, we cannot do so.
In addition to the penalty section, there are other provisions that are not narrowly drawn. The State failed to present to the trial court any statistics that would demonstrate any degree and or nature of a specific emergency. The- ordinance simply states, that its purpose is to reduce, juvenile crime and juvenile victimization. To accomplish this, the ordinance forbids all persons under the age of seventeen from being out after 11:00 p.m. anywhere in the city unless the activity is covered by one of the exceptions. This broad coverage necessarily includes minors involved in legal, wholesome activities who have the permission of their parents. Further, the coverage includes the entire city without any finding that there is a city-wide emergency or problem. Otherwise innocent conduct by a minor with the permission of his parent(s) is criminalized by- this ordinance simply because he/she is in a public place. or establishment after hours. For example, if a sixteen-year-old wants to stop by a fast food restaurant after getting off from work at 11:00 p.m., his conduct is criminalized even if he has called his parent for permission to make the detour. This court- has previously looked at such restrictions very carefully and concluded: “The relationship between the practice of barring children sixteen years of age or younger from public places unless accompanied by a parent or guardian and the objective of safeguarding minors is not compelling enough to justify the serious invasion of personal rights and liberties.” S.W. v. State, 431 So.2d 339, 341 (Fla. 2d DCA 1983). Accordingly, we cannot agree that such a broad coverage as is encompassed by this ordinance has been shown to be necessary to accomplish the demonstrated need.
Having determined that the Tampa ordinance is overly broad and thus fails to survive strict scrutiny review, we conclude that the ordinance is unconstitutional and that the trial court must be reversed. However, we again certify the following question to be of great public importance:
' WHETHER THE TAMPA JUVENILE CURFEW ORDINANCE IS CONSTITUTIONAL?
Reversed.
CASANUEVA, J., Concurs.
NORTHCUTT, J., Concurs specially.

. The Florida Supreme Court actually made the determination of the proper standard of review in T.M. v. State, 784 So.2d 442 (Fla.2001).

. Under the ordinance, the child is not charged until his/her second violation. The first violation merely results in a warning and contact with the child’s parents.

. J.P. moved to supplement the appellate record by supplying certain data presented to the Tampa City Council at the time the ordinance was adopted, however this court denied the motion as the information was not presented to the trial court for its consideration.

. We recognize that the San Diego ordinance found unconstitutional in Nunez suffered the *114 additional infirmity not present ini the Tampa ordinance of not exempting First Amendment activities from its ambit. However, we do not believe that Tampa's inclusion of an exemption for First Amendment activities validates the Tampa ordinance pursuant to Nunez because the ordinance in Nunez, like the ordinance in Tampa, impinges on other fundamental constitutional rights, any one of which would be sufficient to invalidate the ordinance.