QUINCE, J.
We have for review two decisions of the Second District Court of Appeal in which the district court certified questions of great public importance regarding the constitutionality of juvenile curfew ordinances enacted by the city councils of Tampa and Pinellas Park. See J.P. v. State, 832 So.2d 110 (Fla. 2d DCA 2002) (finding Tampa curfew ordinance unconstitutional); State v. T.M., 882 So.2d 118 (Fla. 2d DCA 2002) (finding Pinellas Park curfew ordinance unconstitutional). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.

History of the Cases

These cases are before this Court for the second time. The City of Tampa and the City of Pinellas Park enacted similar juvenile curfew ordinances. J.P. was cited for violation of the Tampa ordinance; *1105 T.M., A.N., and D.N. were cited for violation of the Pinellas Park ordinance. The State Attorney’s Office filed petitions for delinquency against these juveniles. Prior to trial, the juveniles moved to dismiss their cases, arguing that the ordinances are unconstitutional because the ordinances infringe on their fundamental rights of free speech, association, and assembly, are vague and overbroad, and are inconsistent with state law. In the case of J.P., the trial court denied the motion, and J.P. pled no contest but reserved the right to appeal the denial of his motion. In the case of T.M., A.N., and D.N., the trial court granted the juveniles’ motions to dismiss. The trial court reasoned that the juveniles’ parents have a fundamental right to raise their children without governmental intrusion. In assessing the constitutionality of the Pinellas Park ordinance, the trial court applied the strict scrutiny test. The trial court determined that while Pinellas Park has a compelling interest in reducing juvenile crime and victimization, the ordinance is not narrowly tailored in the least restrictive manner to achieve that interest.
In both cases, the losing party appealed to the Second District Court of Appeal. In reviewing the ordinances, the Second District applied intermediate or heightened scrutiny, rather than strict scrutiny. Under this standard, the district court ruled that both ordinances were constitutional. State v. T.M., 761 So.2d 1140, 1143 (Fla. 2d DCA 2000), quashed, 784 So.2d 442 (Fla.2001); J.P. v. State, 775 So.2d 324, 324 (Fla. 2d DCA 2000), quashed, 788 So.2d 953 (Fla.2001). In both cases, the Second District also certified two questions to this Court, asking what level of scrutiny is applicable in reviewing the constitutionality of a juvenile curfew ordinance and whether the ordinances are constitutional. T.M., 761 So.2d at 1150; J.P., 775 So.2d at 325.
In reviewing the decisions in both T.M. and J.P., this Court held that strict scrutiny should be applied when reviewing a juvenile curfew ordinance and answered the first certified question accordingly. T.M. v. State, 784 So.2d 442, 444 (Fla.2001); J.P. v. State, 788 So.2d 953, 953 (Fla.2001). However, this Court declined to answer the second question regarding the constitutionality of the ordinances, quashed the decisions under review, and remanded the cases to the Second District for further proceedings. T.M., 784 So.2d at 444; J.P., 788 So.2d at 953.
On remand, the Second District applied the strict scrutiny standard and concluded that both the Tampa and Pinellas Park juvenile curfew ordinances are unconstitutional. J.P., 832 So.2d at 114; T.M., 832 So.2d at 121. In J.P., the Second District concluded that, while the City of Tampa may have a compelling governmental interest in controlling the whereabouts of juveniles during late night hours, the ordinance is not narrowly tailored to accomplish this goal by the least intrusive means available. 832 So.2d at 112. The district court concluded that the ordinance was not narrowly tailored because it imposes criminal sanctions on a juvenile who violates the Tampa ordinance for a second time and because the State did not present statistical data to support the expansive scope of the ordinance. Id. at 113-14. The district court explained that under the Tampa ordinance, “[ojtherwise innocent conduct by a minor with the permission of his par-entis) is criminalized ... simply because he/she is in a public place or establishment after hours.” Id. at 114.
In T.M., the Second District noted that the Pinellas Park ordinance is very similar to the Tampa ordinance but is even broader in its application because it applies to seventeen-year-olds and provides an ex *1106 ception only for errands involving emergencies. 832 So.2d at 120. Although the State did present statistical data showing a decrease in some categories of juvenile crime after the ordinance was enacted, the district court concluded that this data did not necessarily support the conclusion that the ordinance reduced juvenile crime during the curfew hours as the data did not indicate the time of day in which the criminal events occurred. Id. Thus, the district court concluded, the Pinellas Park ordinance is not narrowly tailored to meet the test of strict scrutiny. The district court affirmed the trial court’s determination that the Pinellas Park ordinance is unconstitutional. Id. at 121.
In both J.P. and T.M., the Second District certified a question of great public importance to this Court regarding the constitutionality of the juvenile curfew ordinances. This Court granted oral argument and sua sponte consolidated the two cases for purposes of oral argument.

The Ordinances

Under the Pinellas Park ordinance, it is unlawful for a juvenile to be or remain in a public place or establishment between 11:00 p.m. and 6:00 a.m. of the following day, Sunday through Thursday, and 12:01 a.m. through 6:00 a.m. on Saturdays, Sundays, and legal holidays. The ordinance defines a juvenile as any person under eighteen years of age who is not legally emancipated. Parents also violate the ordinance if they knowingly allow their child to violate the curfew. See Pinellas Park, Fla., Code § 16-124. The Pinellas Park ordinance provides the following exceptions for juveniles who are in public during the restricted hours: (1) when the juvenile is accompanied by his or her parent or by another adult at least twenty-one years old who is authorized by the juvenile’s parent to have custody; (2) when the juvenile is involved in an emergency or engaged, with his or her parent’s permission, in an emergency errand; (3) when the juvenile is attending or traveling to or from an activity that involves the exercise of rights protected under the First Amendment to the United States Constitution (e.g., religious services, government meetings, political party meetings); (4) when the juvenile is going to and from lawful employment, or in a public place or establishment in connection with or as required by a business, trade, profession, or occupation which the juvenile is lawfully engaged in; (5) when the juvenile is returning directly home from a school-sponsored, religious, or civic organization function; (6) when the juvenile is on the property or on the sidewalk of the juvenile’s own residence or an adult next-door neighbor’s residence with that neighbor’s permission; (7) when the juvenile is engaged in interstate travel or bona fide intrastate travel with the consent of the juvenile’s parent; (8) when the juvenile is attending an organized event sponsored by a theme park or entertainment complex; or (9) when the juvenile is in a public place or establishment as otherwise authorized by the city council for an activity or event not specifically outlined in the other exceptions and which is sponsored by a school, religious, civic, social, or other similar organization or group. Id. § 16-124(E). A juvenile is not criminally charged until his or her second violation of the ordinance. The first violation results in a written warning and contact with the juvenile’s parents. However, a juvenile who is subsequently found in violation can be adjudicated a delinquent child and may be supervised by or committed to the Department of Juvenile Justice for a period not to exceed six months and can be fined up to $500. Id. § 16-124(D)3. A parent of a juvenile who violates the ordinance receives a written warning for the first violation, but may be imprisoned for up to *1107 six months and fined up to $500 for subsequent violations. Id. § 16-124(F)2.
The Tampa juvenile curfew ordinance is essentially the same as the Pinellas Park juvenile curfew ordinance. See Tampa, Fla., Code § 14-26. The following significant differences appear in the Tampa ordinance: (1) it applies to persons under seventeen years of age; (2) it provides an exception for nonemergency errands with the written approval of a parent; (3) it provides an exception for homeless juveniles who use a public place as their usual abode; (4) it imposes criminal liability on business owners or operators for knowingly permitting a juvenile to remain on business premises during curfew hours; and (5) and it permits a fine of up to $1000 and up to six months’ incarceration for a second or subsequent violation. See Tampa, Fla., Code §§ l-6(a), 14-26(c)-(g).

Standard of Review

The Second District’s rulings on the constitutionality of the ordinances are subject to de novo review by this Court. See City of Miami v. McGrath, 824 So.2d 143, 146 (Fla.2002) (stating that constitutionality of a state statute is a pure question of law subject to de novo review); Lowe v. Broward County, 766 So.2d 1199, 1203 (Fla. 4th DCA 2000) (applying principle to an order determining the constitutionality of a municipal ordinance); see also Philip J. Padovano, Florida Appellate Practice § 9.4 (2003 ed.). As we unanimously ruled in our initial review of these cases, in Florida “strict scrutiny applies when reviewing a juvenile curfew ordinance.” T.M., 784 So.2d at 444; see also J.P., 788 So.2d at 953; R.J.H. v. State, 788 So.2d 952, 952 (Fla.2001); J.A. v. State, 788 So.2d 953, 954 (Fla.2001); D.N.S. v. State, 788 So.2d 955, 955 (Fla.2001); M.R. v. State, 788 So.2d 957, 958 (Fla.2001).[1]
This Court recognizes that foreign jurisdictions addressing the constitutionality of juvenile curfew ordinances have incorporated the minors’ status into the equal protection framework in three different ways. See Ramos v. Town of Vernon, 353 F.3d 171, 176-77 (2d Cir.2003) (outlining the three approaches). “The first approach defines the relevant interest so narrowly that it is not deemed a constitutional right and heightened scrutiny does not come into play.” Id. at 176; see also Dissenting op. at 1123 (Cantero, J., dissenting) (“Because of the many factors that distinguish minors from adults, I do not believe minors have such a right at all, and much less that any such right is so fundamental that it cannot be circumscribed.”). Under this methodology, the very characteristic that defines the plaintiff class — their age — divests them of a right they would otherwise hold. Ramos, 353 F.3d at 176. See, e.g., Hutchins v. *1108 District of Columbia, 188 F.3d 531, 539 (D.C.Cir.1999) (stating that “unemanci-pated minors lack some of the most fundamental rights — including even the right of liberty in its narrow sense, i.e., the right to come and go at will”) (quoting Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 654, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995)).
The second approach recognizes that children, like adults, have a constitutional right to free movement, but then reduces the level of scrutiny to compensate for children’s special vulnerabilities. See T.M., 761 So.2d at 1146, quashed, 784 So.2d 442 (“There are three reasons why the constitutional rights of children are not coextensive with those of adults....”); Dissenting op. at 1131 (Cantero, J., dissenting) (“Intermediate scrutiny is the appropriate level of review, even if the ordinances implicate a fundamental right, because the ordinances govern the conduct of minors.”). Courts adopting this approach have ruled that the unique interrelationship between minors and the state renders strict scrutiny inappropriate. Ramos, 353 F.3d at 176. See, e.g., Schleifer v. City of Charlottesville, 159 F.3d 843, 847 (4th Cir.1998) (“[C]hildren do possess at least qualified rights, so an ordinance which restricts their liberty to the extent that this one does should be subject to more than rational basis review. Second, because children do not possess the same rights as adults, the ordinance should be subject to less than the strictest level of scrutiny.”).
The third approach, which was taken by this Court in T.M. and J.P., assumes that once a constitutional right has been recognized, its exercise by minors should be protected by strict scrutiny, just as it is for adults. See T.M., 784 So.2d at 444; J.P., 788 So.2d at 953. “Rather than using children’s status to divest them of rights or to weaken the formal protections of those rights, courts taking this third approach factor in the unique attributes of minors in determining whether the government has a compelling interest justifying restrictions on minors’ freedoms.” Ramos, 353 F.3d at 177. See, e.g., Nunez v. City of San Diego, 114 F.3d 935, 944-46 (9th Cir.1997) (finding juveniles’ fundamental rights implicated and applying strict scrutiny); Schleifer, 159 F.3d at 863 (Michael, J., dissenting) (“[T]he ‘fundamental rights’ of minors are no less fundamental than those of adults and, thus, must be protected with the same vigor under a strict scrutiny analysis.”); Qutb v. Strauss, 11 F.3d 488, 492 (5th Cir.1993) (assuming, without deciding, that a fundamental right to move about freely is implicated by a juvenile curfew ordinance and applying strict scrutiny); City of Sumner v. Walsh, 148 Wash.2d 490, 61 P.3d 1111, 1118 (2003) (Chambers, J., concurring) (applying strict scrutiny to a similar juvenile curfew ordinance).
The dissent “believe[s] the rational basis standard should apply to review of these ordinances.” Dissenting op. at 1120 (Cantero, J., dissenting). However, accepting the dissent’s analysis would require the Court to recede from its precedent of only three years ago, in which we held that the strict scrutiny standard is applicable when reviewing juvenile curfew ordinances. See T.M., 784 So.2d at 444; J.P., 788 So.2d at 953; R.J.H., 788 So.2d at 952; J.A., 788 So.2d at 954; D.N.S., 788 So.2d at 955; M.R., 788 So.2d at 958 (all holding that “strict scrutiny applies to juvenile curfew ordinances”).
This Court adheres to the doctrine of stare decisis. See, e.g., Muhammad v. State, 782 So.2d 343, 365 n. 16 (Fla.2001); see also Tyson v. Mattair, 8 Fla. 107, 124 (1858) (“It is an established rule to abide by former precedents, stare decisis, where the same points come again *1109 in litigation, as well to keep the scale of justice even and steady, and not liable to waver with every new judge’s opinion....”).[2] Stare decisis bends where there has been a significant change in circumstances since the adoption of the legal rule, see Weiand v. State, 732 So.2d 1044, 1055 n. 12 (Fla.1999), or where there has been an error in legal analysis. See State v. Gray, 654 So.2d 552, 554 (Fla.1995); see also Brown v. State, 719 So.2d 882, 890 (Fla.1998) (Wells, J., dissenting) (“[Ijntel-lectual honesty continues to demand that precedent be followed unless there has been a clear showing that the earlier decision was factually or legally erroneous or has not proven acceptable in actual practice.”).
 In the instant case, there has not been a significant change in circumstances since our decisions applying the strict scrutiny standard. Nor has the application of the strict scrutiny standard to juvenile curfew ordinances proven clearly legally erroneous. As an institution cloaked with public legitimacy, this Court cannot recede from its own controlling precedent when the only change has been the membership of the Court. See Mitchell v. W.T. Grant Co., 416 U.S. 600, 636, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) (Stewart, J., dissenting) (“A basic change in the law upon a ground no firmer than a change in our membership invites the popular misconception that this institution is little different from the two political branches of the Government.”). “[W]hen a Court is asked to overrule a precedent recognizing a constitutional liberty interest, individual or societal reliance on the existence of that liberty cautions with particular strength against reversing course.” Lawrence v. Texas, 539 U.S. 558, 577, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003); see also Planned Parenthood v. Casey, 505 U.S. 833, 844, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) (“Liberty finds no refuge in a jurisprudence of doubt.”). While the dissent is correct that some foreign jurisdictions differ on the level of scrutiny appropriate to juvenile curfews, Florida law is clear. Strict scrutiny is the law of this state.
When a statute or ordinance operates to the disadvantage of a suspect class or impairs the exercise of a fundamental right, then the law must pass strict scrutiny. See, e.g., Reno v. Flores, 507 U.S. 292, 302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993); Mitchell v. Moore, 786 So.2d 521, 527 (Fla.2001). Although the juvenile curfew ordinances target a certain age group, the United States Supreme Court has ruled that age is not a suspect classification under the Equal Protection Clause. See Gregory v. Ashcroft, 501 U.S. 452, 470, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991). Thus, strict scrutiny is applicable here because fundamental rights are implicated by the juvenile curfew ordinances. A fundamental right is one which has its source in and is explicitly guaranteed by the federal or Florida Constitution. See, e.g., T.M., 784 So.2d at 444 n. 1; Reno v. Flores, 507 U.S. at 302, 113 S.Ct. 1439. The fundamental rights to privacy and freedom of movement are implicated by these ordinances. It is settled law that each of the personal liberties enumerated in the Declaration of Rights of the Florida Constitution is a fundamental right. See generally Traylor v. State, 596 So.2d 957 (Fla.1992). “Florida courts consistently have applied the ‘strict’ scrutiny standard whenever the Right of Privacy Clause was implicated, regardless of the nature of the activity.” N. Fla. Women’s Health & Counseling *1110 Servs., Inc. v. State, 866 So.2d 612, 635 (Fla.2003).[3] To withstand strict scrutiny, a law must be necessary to promote a compelling governmental interest and must be narrowly tailored to advance that interest. See Qutb v. Strauss, 11 F.3d 488, 492 (5th Cir.1993) (applying strict scrutiny to review a Dallas juvenile curfew ordinance). Strict scrutiny requires the State to demonstrate that the challenged regulation serves a compelling state interest and accomplishes its goal through the use of the least intrusive means. See Winfield v. Div. of Pari-Mutuel Wagering, 477 So.2d 544 (Fla.1985) (explaining that where law intrudes on fundamental right to privacy guaranteed in Florida’s Constitution, the State must demonstrate that the challenged regulation serves a compelling state interest and accomplishes its goal through the use of the least intrusive means).

Fundamental Rights

The juvenile respondents claim that the curfew ordinances implicate their fundamental rights to privacy, free speech, assembly, and free movement. They also claim that a parent’s right to raise his or her children, sometimes referred to as family privacy, is also implicated by the ordinances.
Minors possess constitutional rights under both the federal and Florida constitutions. See, e.g., Bellotti v. Baird, 443 U.S. 622, 634, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (plurality opinion) (“With respect to [minors’ claims to constitutional protection against deprivations of liberty or property interests by the State], we have concluded that the child’s right is virtually coextensive with that of an adult.”); Planned Parenthood v. Danforth, 428 U.S. 52, 74, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976) (“Constitutional rights do not mature and come into being magically only when one attains the state-defined age of majority. Minors, as well as adults, are protected by the Constitution and possess *1111 constitutional rights.”); accord In re T.W., 551 So.2d 1186, 1193 (Fla.1989). The United States Supreme Court has consistently protected children from governmental infringement of their constitutional rights. See, e.g., McConnell v. Fed. Election Comm’n, 540 U.S. 93, 124 S.Ct. 619, 711, 157 L.Ed.2d 491 (2003) (striking down a provision of the Bipartisan Campaign Reform Act of 2002 which prohibited political donations by minors because it violated minors’ freedoms of expression and association); Breed v. Jones, 421 U.S. 519, 541, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975) (holding that the prosecution of a defendant as an adult in state court, after an adjudicatory proceeding in juvenile court, violated double jeopardy); Goss v. Lopez, 419 U.S. 565, 574, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (concluding that students facing temporary suspension from school have a property interest in educational benefits that qualifies for certain due process protections); In re Gault, 387 U.S. 1, 41, 55, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (concluding that juvenile who is involved in a delinquency proceeding which may result in commitment to a state institution has a right to counsel and that “the constitutional privilege against self-incrimination is applicable in the case of juveniles as it is with respect to adults”); see also Waters v. Barry, 711 F.Supp. 1125, 1134 (D.D.C.1989) (characterizing the juvenile curfew at issue as “a bull in a china shop of constitutional values”). However, under certain circumstances the rights of minors may be treated differently from the rights of adults. Differential treatment of minors may be based upon “the particular vulnerability of children; their inability to make critical decisions in an informed, mature manner; and the importance of the parental role in child rearing.” Bellotti, 443 U.S. at 634, 99 S.Ct. 3035 (plurality opinion). This Court has also stated that “[c]ommon sense dictates that a minor’s rights are not absolute.” In re T.W., 551 So.2d at 1193.
“[T]he First Amendment and article I, section 5 of the Florida Constitution protect the rights of individuals to associate with whom they please and to assemble with others for political or for social purposes.” Wyche v. State, 619 So.2d 231, 234 (Fla.1993); see also NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 466, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) (recognizing the right to freedom of association as a separate and distinct right within the First Amendment). The United States Supreme Court has “long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.” Roberts v. United States Jaycees, 468 U.S. 609, 622, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). Moreover, “[mjinors enjoy the protection of the First Amendment.” McConnell v. Fed. Election Comm’n, 124 S.Ct. at 711. Notwithstanding these constitutionally protected First Amendment rights, we conclude that the ordinances at issue here do not implicate the juveniles’ rights to free speech and assembly as these activities are specifically exempted from their ambit. See Tampa, Fla., Code § 14-26(d)(8) (stating that the provisions of the ordinance do not apply if a juvenile is “[ejxercising First Amendment rights protected by the United States Constitution such as freedom of speech, or free exercise of religion”); Pinellas Park, Fla., Code § 16-124(E)3 (same; citing as examples of such activities “religious services, governmental meeting, political party meeting”). Cf. Hodgkins v. Peterson, 355 F.3d 1048, 1064 (7th Cir.2004) (striking down a juvenile curfew with similar exceptions on First Amendment grounds because “the *1112 curfew law, even with the new affirmative defenses for First Amendment activity, is not narrowly tailored to serve a significant governmental interest and fails to allow for ample alternative channels for expression”); Waters v. Barry, 711 F.Supp. 1125, 1134 (D.D.C.1989) (concluding that the juvenile curfew ordinance at issue “tramples upon the associational and liberty interests of the [minors]”). “[T]he Florida Constitution contains, in article I, section 23, a strong right of privacy provision.” Alterra Healthcare Corp. v. Estate of Shelley, 827 So.2d 936, 941 (Fla.2002). In regard to the juveniles’ privacy rights, this Court has specifically held that the privacy right guaranteed by article I, section 23 of the Florida Constitution extends to minors. See In re T.W., 551 So.2d at 1193 (explaining that the unambiguous language of the Florida privacy amendment extends to “[e]very natural person” and “[mjinors are natural persons in the eyes of the law”); B.B. v. State, 659 So.2d 256, 258 (Fla.1995). Further, the Florida constitutional privacy right “embraces more privacy interests, and extends more protection to the individual in those interests, than does the federal Constitution.” In re T.W., 551 So.2d at 1192. However, as this Court has explained, “[t]he rights of privacy that have been granted to minors do not vitiate the legislature’s efforts and authority to protect minors from conduct of others.” Jones v. State, 640 So.2d 1084, 1087 (Fla.1994) (upholding the constitutionality of statute prohibiting sexual contact between adults and minors even when minors ostensibly consent because of State’s compelling interest in protecting minors from sexual exploitation). Thus, the cities’ asserted compelling interest of preventing victimization of minors could outweigh the minors’ privacy rights during the curfew hours, if the ordinances were narrowly tailored to achieve that goal as required by strict scrutiny.
The juveniles also assert that the curfew ordinances impact their constitutional right of freedom of movement. The freedom to travel throughout the United States and the freedom of movement have been recognized as basic rights under the federal Constitution. See, e.g., Papachristou v. City of Jacksonville, 405 U.S. 156, 164, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972) (striking down a vagrancy ordinance which prohibited persons from walking, wandering, strolling, or loafing; characterizing these activities as “part of the amenities of life” which have “encouraged lives of high spirits rather than hushed, suffocating silence”). Dating back to the Articles of Confederation, “the people of each State ... have [had] free ingress and regress to and from any other State.” Art. IV, Articles of Confederation. This “freedom to travel throughout the United States has long been recognized as a basic right under the Constitution” as well. United States v. Guest, 383 U.S. 745, 758, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966). In fact, “[t]his freedom of movement is the very essence of our free society, setting us apart. Like the right of assembly and the right of association, it often makes all other rights meaningful — knowing, studying, arguing, exploring, conversing, observing and even thinking.” Aptheker v. Sec’y of State, 378 U.S. 500, 520, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964) (Douglas, J., concurring); see also Saenz v. Roe, 526 U.S. 489, 498, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999) (describing the constitutional right to interstate travel as “firmly embedded” in the Supreme Court’s jurisprudence); Kolender v. Lawson, 461 U.S. 352, 358, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) (finding that anti-loitering statute that required individuals to provide “credible and reliable” identification “implicates consideration of the constitutional right to freedom of *1113 movement”); Shapiro v. Thompson, 394 U.S. 618, 638, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (striking down a durational residency requirement for welfare benefits for violating the “fundamental right of interstate movement”), overruled in part on other grounds, Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Cf. Rowell v. Holt, 850 So.2d 474, 480 (Fla.2003) (describing petitioner’s unjust pretrial detention as depriving him of “one’s most basic freedoms — the freedom of movement, the right to privacy, and the freedom to associate with persons of one’s own choosing”).
We acknowledge that the United States Supreme Court has never definitively ruled that there is a fundamental right to intrastate travel and that the federal circuit courts are divided on the issue. Compare Johnson v. City of Cincinnati, 310 F.3d 484, 498 (6th Cir.2002) (“In view of the historical endorsement of a right to intrastate travel and the practical necessity of such a right, we hold that the Constitution protects a right to travel locally through public spaces and roadways.”), cert. denied, 539 U.S. 915, 123 S.Ct. 2276, 156 L.Ed.2d 130 (2003), with Wright v. City of Jackson, 506 F.2d 900, 902 (5th Cir.1975) (stating that there is no “fundamental constitutional ‘right to commute’ ”). However, the right to intrastate travel in Florida is clear. In Wyche, this Court wrote:
Hailing a cab or a friend, chatting on a public street, and simply strolling aimlessly are time-honored pastimes in our society and are clearly protected under Florida as well as federal law. All Florida citizens enjoy the inherent right to window shop, saunter down a sidewalk, and wave to friends and passersby with no fear of arrest.
619 So.2d at 235 (footnote and citation omitted) (emphasis added). As discussed above, however, the compelling interests of protecting juveniles and reducing juvenile crimes could outweigh the juveniles’ right to travel freely during the nighttime curfew hours if the ordinances were narrowly tailored to achieve those goals.
Finally, the juveniles argue that the ordinances impinge on parents’ rights to raise their children. In its reconsideration of the constitutionality of the Tampa and Pinellas Park ordinances after remand by this Court, the Second District never addressed the juveniles’ claims that the ordinances burden parents’ fundamental right to raise their children. Because the Second District never determined whether these juveniles have standing to assert the constitutional rights of their parents,[4] we decline to rule on these claims. See State v. T.M., 761 So.2d 1140, 1145 (Fla. 2d DCA 2000) (declining to address whether juveniles had standing to challenge the ordinance’s impact on their parents’ substantive due process rights). Notwithstanding this, for the sake of completeness we discuss, without deciding, this issue.
The United States Supreme Court has recognized that “freedom of personal *1114 choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment.” Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Beginning with Meyer v. Nebraska, 262 U.S. 390, 397, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), the Supreme Court has recognized that parents have a constitutionally protected interest in child rearing. For example, in Wisconsin v. Yoder, 406 U.S. 205, 232, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), the Supreme Court stated that the “primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition.” The Supreme Court has also stated that parents’ right to rear their children without undue governmental interference is a fundamental component of due process. See Ginsberg v. New York, 390 U.S. 629, 639, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968). However, these parental rights are not absolute and the state as parens patriae may, in certain situations, usurp parental control. See, e.g., Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1944) (stating that “the family itself is not beyond regulation in the public interest”).
Although the United States Supreme Court has not examined the impact of juvenile curfew laws on parental rights, several federal courts and courts in other states have. Some of these courts have rejected constitutional challenges to juvenile curfews based on the parental right to privacy. See Hutchins v. District of Columbia, 188 F.3d 531, 540-41 (D.C.Cir.1999) (concluding that federal right of parental control in upbringing of children does not extend to parental decisions of when and if children will be on streets, but only encompasses parents’ control of home and formal education of children); Schleifer v. City of Charlottesville, 159 F.3d 843, 853 (4th Cir.1998) (concluding that juvenile curfew ordinance does not implicate the kinds of intimate family decisions where state may not interfere; also concluding that exemptions to ordinance accommodate rights of parents); Qutb v. Strauss, 11 F.3d 488, 495-96 (5th Cir.1993) (finding that only aspect of parenting that ordinance bears upon is parent’s right to allow minor to remain in public places unaccompanied during hours restricted by ordinance; concluding that parent retains right to make decisions regarding child in all other areas due to broad exceptions included in ordinance); Bykofsky v. Borough of Middletown, 401 F.Supp. 1242, 1264 (M.D.Pa.1975) (concluding that “ordinance constitutes a minimal interference with the parental interest in influencing and controlling the activities of their offspring,” in light of numerous exceptions specified in ordinance, including parental accompaniment exception), aff'd, 535 F.2d 1245 (3d Cir.1976).
However, other federal and state courts have reached the opposite conclusion. See Ramos v. Town of Vernon, 353 F.3d 171, 183 (2d Cir.2003) (“[W]e cannot sit in judgment of a parental philosophy allowing late night activity, for ‘between parents and judges, the parents should be the ones to choose whether to expose their children to certain people or ideas.’ ”) (quoting Troxel v. Granville, 530 U.S. 57, 63, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000)); Nunez v. City of San Diego, 114 F.3d 935, 952 (9th Cir.1997) (characterizing juvenile curfew as “an exercise of sweeping state control irrespective of parents’ wishes”); City of Sumner v. Walsh, 148 Wash.2d 490, 61 P.3d 1111, 1118 n. 2 (2003) (Chambers, J., concurring) (“If the ordinance is an unconstitutional infringement on the child’s liberties, to enforce it against the parent would effectively allow the State to infringe by proxy what it could not infringe directly.”); McCollester v. City of Keene, 586 F.Supp. 1381, 1386 (D.N.H.1984) (find *1115 ing curfew ordinance usurps “parental discretion in supervising a child’s activities and imposing parental liability even where the parent exercised reasonable control or supervision”); Betancourt v. Town of West New York, 338 N.J.Super. 415, 769 A.2d 1065, 1068 (App.Div.2001) (concluding that exceptions in juvenile curfew ordinance were “not broad enough to recognize the right of parents to permit their children to participate in many legitimate activities”); Ex parte McCarver, 39 Tex.Crim. 448, 46 S.W. 936, 937 (1898) (“We regard this ... [juvenile curfew ordinance] as an attempt to usurp the parental functions, and as unreasonable, and we therefore hold the ordinance in question as illegal and void.”).
“[T]he protection of a person’s general right to privacy — his right to be let alone by other people — is, like the protection of his property and of his very life, left largely to the law of the individual States.” Katz v. United States, 389 U.S. 347, 350-51, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (footnote omitted); accord N. Fla. Women’s Health & Counseling Servs., Inc. v. State, 866 So.2d 612, 635 (Fla.2003). Notably, the Florida Constitution contains an explicit privacy provision which affords Florida citizens greater protection in the area of privacy than does the federal Constitution. See In re T.W., 551 So.2d at 1191-92. This free-standing right to privacy was added to Florida’s Constitution by a citizen vote in 1980. Article I, section 23 of the Florida Constitution provides that “[e]very natural person has the right to be let alone and free from governmental intrusion into the person’s private life.” This privacy right includes the right to liberty and self-determination. See In re Guardianship of Browning, 568 So.2d 4, 9 (Fla.1990). Because the right to privacy is explicit in the Florida Constitution, it has been interpreted as giving Florida citizens more protection than the federal right. See In re T.W., 551 So.2d 1186, 1191-92 (Fla.1989). Florida’s constitutional right to privacy has been implicated in a vast array of cases dealing with personal privacy. See N. Fla. Women’s Health, 866 So.2d at 619 n. 6 (citing a number of cases involving Florida’s constitutional right to privacy provision). This Court has also recognized “a longstanding and fundamental liberty interest of parents in determining the care and upbringing of their children free from the heavy hand of government paternalism.” Padgett v. Dep’t of Health & Rehab. Servs., 577 So.2d 565, 570 (Fla.1991). Moreover, “there is a constitutionally protected interest in preserving the family and raising one’s children.” S.B. v. Dep’t of Children & Families, 851 So.2d 689, 692 (Fla.2003). Based upon the Florida Constitution’s explicit privacy provision and the Florida case law recognizing that this right encompasses family privacy, we conclude that the ordinances may implicate the parental right to raise children. See, e.g., Beagle v. Beagle, 678 So.2d 1271, 1272 (Fla.1996) (invalidating a grandparent visitation statute because “the challenged paragraph infringes upon the rights of parents to raise their children free from government intervention”). However, because the juveniles’ parents are not parties to this action, we decline to rule on their rights. Accordingly, we leave resolution of this issue for another day.[5]
Because the juveniles’ fundamental rights to privacy and freedom of move *1116 ment are burdened by the curfew ordinances, the cities must have a compelling governmental interest in regulating the activities of minors during the hours of the curfew and the ordinances must be narrowly tailored to accomplish their goals by the least intrusive means available. We address each part of this strict scrutiny test in turn below.

Compelling Governmental Interest

The cities assert that the ordinances serve several compelling interests, including reducing juvenile crime, protecting juveniles from victimization, protecting all citizens, residents, and visitors from juvenile crime, and promoting parental control over juveniles. The ordinances include legislative findings as to these compelling interests. The Tampa ordinance does not contain a statement of factual support, but simply states that the “City of Tampa hereby finds and determines as a matter of fact” that the city is faced with a number of problems, including “an unacceptable level of crime, including juvenile crime” that threatens citizens and visitors, and that this crime level presents “a clear and present danger” to “the public order and safety.” Tampa, Fla., Code § 14-26(a)(1). The Tampa ordinance also includes the following findings to support implementation of the juvenile curfew: effective crime fighting requires focusing on juvenile crime, id. § 14-26(a)(2); there is a substantial number of violent crimes against juveniles in Tampa, id. § 14-26(a)(3); and juveniles are particularly vulnerable and unable to make critical decisions in an informed and mature manner and parents play an important role in child rearing, id. § 14-26(a)(5).
The Pinellas Park ordinance states that its findings are based on “statistical data and reports of law enforcement officials.” Pinellas Park, Fla., Code § 16-124(B)1. Based upon this “statistical data and reports of law enforcement officials,” the Pi-nellas Park City Council made the following findings: the reduction of juvenile crime and victimization and the promotion of juvenile safety and well-being are matters of compelling governmental interest; a substantial portion of crime is committed by juveniles and much of this crime takes place at night; there has been a steady increase in crimes by and against juveniles that cannot be stemmed without a curfew; juveniles are particularly vulnerable to crime and victimization because of their inability to make critical decisions in an informed, thoughtful, and mature manner; juvenile crimes have adverse consequences for all juveniles; increased juvenile activity has caused apprehension and impacted the freedom of law-abiding citizens; there has been a high number of repeat juvenile offenses and an escalating juvenile crime rate that the juvenile justice system has not been able to deal with effectively; juvenile crime activity decreases with parental control and shifting supervisory responsibility to parents results in fiscal savings to the public and a more wholesome community; the government has a compelling interest to protect juveniles during nighttime hours; juveniles who have been suspended or expelled from school must be prevented from disrupting school activities; the unacceptable level of juvenile crime threatens citizens and presents clear and present danger to the public; and a juvenile curfew ordinance is necessary to protect public interest. Pinellas Park, Fla., Code § 16-124(B)l(aMi).
The juveniles argue that the cities have not offered statistical data to support these findings or the need for juvenile curfews and thus have not met their burden of proving a compelling interest. Where legislation is intended to serve some compelling interest, the “government ‘must do more than simply posit the exis *1117 tence of the disease sought to be cured. It must demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way.’ ” Schleifer v. City of Charlottesville, 159 F.3d 843, 849 (4th Cir.1998) (quoting Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622, 664, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994)). However, this standard has never required scientific or statistical proof of the wisdom of the legislature’s course. Cf. Ginsberg v. New York, 390 U.S. 629, 642, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968) (“We do not demand of legislatures ‘scientifically certain criteria of legislation.’ ”) (quoting Noble State Bank v. Haskell, 219 U.S. 104, 110, 31 S.Ct. 186, 55 L.Ed. 112 (1911)).
The Second District conceded that the cities “face the challenges of protecting juveniles from victimization and reducing juvenile crime.” T.M., 832 So.2d at 120-21. We likewise conclude that the findings stated in the ordinances satisfy the compelling interest prong of the strict scrutiny test. Thus, the real issue presented by these ordinances is whether they are narrowly tailored to meet those goals.

Narrowly Tailored

In order for an ordinance to be narrowly tailored, “there must be a sufficient nexus between the stated government interest and the classification created by the ordinance.” Nunez v. City of San Diego, 114 F.3d at 946. Thus, in regard to the ordinances’ impact on juveniles’ fundamental rights, the constitutionality of the ordinances will hinge upon the nexus between the asserted interests and the means chosen, and whether this is the least restrictive alternative to achieve the goals.
In determining whether an ordinance is narrowly tailored, courts have looked to the scope of the curfew, including what hours the curfew is in effect and what age group is covered. In several federal cases, the courts have found the scope to be “limited” and not restrictive because the curfew restrictions did not begin until relatively late at night, ended early in the morning, or only applied to minors under seventeen or eighteen years of age. See, e.g., Schleifer, 159 F.3d at 852. However, some of the ordinances that courts have struck as unconstitutional have covered the identical age groups and the same hours as those upheld by other courts. See, e.g., Waters v. Barry, 711 F.Supp. 1125, 1141 (D.D.C.1989) (concluding that District of Columbia’s juvenile curfew applicable to persons under eighteen years between 11:00 p.m. and 6:00 a.m. violated the minors’ associational rights and liberty interests). Thus, the scope of the curfew may not be the best assessment of whether an ordinance is narrowly tailored for purposes of passing strict scrutiny.
The scope of the exceptions to the curfew is of more significance in assessing whether an ordinance is narrowly tailored. See Qutb, 11 F.3d at 493-94. Where a curfew sweeps too broadly and includes within its ambit “a number of innocent activities which are constitutionally protected,” it does not satisfy the narrowly tailored aspect of strict scrutiny. Johnson v. City of Opelousas, 658 F.2d 1065, 1074 (5th Cir.1981) (finding that absence of exceptions in juvenile curfew ordinance precluded a narrowing construction and rendered the ordinance unconstitutionally overbroad).
In J.P., the Second District concluded that the Tampa ordinance was not narrowly drawn to serve the stated purposes of reducing juvenile crime and victimization. 832 So.2d at 113-14. The district court cited three separate problems with the Tampa ordinance: (1) the ordinance imposes criminal sanctions rather than a civil infraction fine; (2) the applicability of the *1118 curfew to all persons under the age of seventeen unless one of the exceptions applies “necessarily includes minors involved in legal, wholesome activities who have the permission of their parents”; and (3) “the coverage includes the entire city without any finding that there is a city-wide emergency or problem.” Id. at 114. In T.M., the Second District “follow[ed] the reasoning expressed in J.P.,” and concluded that “the Pinellas Park ordinance, which is even broader in its application, must necessarily fail the strict scrutiny test.” 832 So.2d at 120. The district court noted that the Pinellas Park ordinance is more inclusive because it applies to seventeen-year-olds and only provides an exception involving parental permission for emergency errands. Id.
We agree with the Second District that the ordinances are not “narrowly tailored” because the broad coverage of both curfews includes otherwise innocent and legal conduct by minors even where they have the permission of their parents and the ordinances impose criminal penalties for curfew violations. We address each of these issues in turn. However, because we find the ordinances to be overbroad and to impose criminal sanctions, we do not address the issue concerning statistical data.

1. Broad Coverage

In order to accomplish the goals of reducing juvenile crime and juvenile victimization, the ordinances forbid juveniles under the specified age (eighteen in Pinellas Park and seventeen in Tampa) from being out after the curfew hours “anywhere in the city unless the activity is covered by one of the exceptions.” J.P., 832 So.2d at 114. As the Second District concluded, “[t]his broad coverage necessarily includes minors involved in legal, wholesome activities who have the permission of their parents.” Id. Further, the curfews apply throughout the cities without any showing of a city-wide need or problem. Additionally, the Pinellas Park ordinance is even broader in application than is the Tampa ordinance; the Pinellas Park ordinance provides no exception for juveniles engaged in nonemergency errands with parental permission and includes a larger group of individuals because it applies to seventeen-year-olds. Thus, we agree with the Second District that both ordinances are not narrowly tailored in their coverage.

2. Imposition of Criminal Sanctions

The penalties imposed by the ordinances for second and subsequent violations of the curfews are possibly the most troubling aspect of our strict scrutiny review. Under both the Tampa and the Pinellas Park ordinances, juveniles and parents can be incarcerated and fined after the first curfew violation.[6] In the case of the Tampa ordinance, business operators who knowingly permit a juvenile to remain on business premises during curfew hours are also subject to the sanctions.[7] In contrast, the model juvenile curfew ordinance enacted by the Florida Legislature imposes a civil infraction fine of $50 for the second *1119 and subsequent violations. See §§ 877.22(3), 877.23(3), Fla. Stat. (2002).[8]
The Second District concluded that these criminal penalties indicate that the Tampa ordinance does not use the least intrusive means to accomplish its purpose, especially when viewed against the model ordinance which accomplishes the same goal with only a civil penalty. J.P., 832 So.2d at 114. The State conceded that the penalty clause of the Tampa ordinance could not pass strict scrutiny and asked the district court to sever this provision from the ordinance. Id. at 113-14. However, because the district court concluded that there were other provisions that were not narrowly drawn to accomplish the stated goals, the court concluded that the ordinance could not be saved by merely removing the penalty paragraphs. Id. at 114.
The Dallas ordinance which was upheld by the Fifth Circuit in Qutb provides for a $500 fine for each curfew violation, but does not provide for incarceration. Similarly, most of the ordinances that have been upheld as constitutional only impose civil fines or community service requirements. See, e.g., Hutchins v. District of Columbia, 188 F.3d at 535 (providing that minor can be ordered to perform twenty-five hours of community service and parent can be required to perform community service, attend parenting classes, and pay $500 fine). But see Schleifer, 159 F.3d at 858 (upholding constitutionality of ordinance providing that curfew violation is a class 4 misdemeanor).
We conclude that the penalty provisions of the instant ordinances do not meet strict scrutiny. The criminal sanctions are antithetical to the stated interests of protecting juveniles from victimization. Further, the imposition of criminal sanctions is not narrowly tailored to achieve the stated interests. The same goals could be achieved by imposing a civil penalty. See J.P., 832 So.2d at 113-14.
In his dissenting opinion, Justice Cantero contends that the ordinances can be saved by severing the criminal penalties from the remaining provisions. See dissenting op. at 1137-38 (Cantero, J., dissenting). While the dissenting opinion correctly cites the test for determining severability, it ignores an important adjective in the first part of this test, namely that the remaining provisions are “valid.” See Waldrup v. Dugger, 562 So.2d 687, 693 (Fla.1990). Here, we have determined that the ordinances suffer from other constitutional failings which render them invalid. Thus, severing the criminal penalty provisions cannot save these ordinances.

Conclusion

In light of the problems discussed above, we conclude that the Tampa and Pinellas Park juvenile curfew ordinances are not narrowly tailored and thus fail to survive strict scrutiny.[9] Accordingly, we answer the certified questions in the negative and approve the decisions of the Second District Court of Appeal in J.P. and T.M. to *1120 the extent that they are consistent with this opinion.
It is so ordered.
PARIENTE, C.J., and ANSTEAD and LEWIS, JJ., concur.
WELLS, J., dissents with an opinion, in which CANTERO, J., concurs.
CANTERO, J., dissents with an opinion, in which WELLS and BELL, JJ., concur.

. In his dissenting opinion, Justice Cantero asserts that this Court merely agreed with the State's concession that the strict scrutiny standard applied and failed to make an independent determination of the proper standard for determining the statute's constitutionality. See Dissenting op. at 1120-21 (Cantero, J., dissenting); see also Dissenting op. at 1120 (Wells, J., dissenting) ("My vote in those earlier cases was a recognition of the State's concession which was made in this Court.”). However, the dissenting justices overlook a crucial sentence in our previous opinion. While acknowledging that the State conceded in its answer brief and affirmatively maintained at oral argument that strict scrutiny should apply to the ordinance in question, we specifically stated that "[w]e agree” with the standard and held "that strict scrutiny applies when reviewing a juvenile curfew ordinance.” T.M., 784 So.2d at 444. This was not an instance in which we assumed, without deciding, that strict scrutiny was the proper standard for reviewing the juvenile curfew ordinances. Thus, while the dissent may embrace the rational basis standard under the guise of a "concession of error,” it is actually an abandonment of the strict scrutiny standard established by the Court’s unanimous holdings in T.M. and J.P.

. "The doctrine of stare decisis, or the obligation of a court to abide by its own precedent, is grounded on the need for stability in the law and has been a fundamental tenet of Anglo-American jurisprudence for centuries.” N. Fla. Women’s Health & Counseling Servs., Inc. v. State, 866 So.2d 612, 637 (Fla.2003).

. See also Von Eiff v. Azicri, 720 So.2d 510 (Fla.1998) (applying the strict scrutiny standard in addressing the visitation rights of grandparents when a child's parent is deceased); J.A.S. v. State, 705 So.2d 1381 (Fla.1998) (applying the strict scrutiny standard in addressing a statutory rape law); Krischer v. McIver, 697 So.2d 97 (Fla.1997) (applying the strict scrutiny standard in addressing assisted suicide); Beagle v. Beagle, 678 So.2d 1271 (Fla.1996) (applying the strict scrutiny standard in addressing the visitation rights of grandparents when a child’s parents are living together); B.B. v. State, 659 So.2d 256 (Fla.1995) (applying the strict scrutiny standard in addressing a statutory rape law); Jones v. State, 640 So.2d 1084 (Fla.1994) (same); In re Dubreuil, 629 So.2d 819 (Fla.1993) (applying the strict scrutiny standard in addressing a patient's right to refuse a blood transfusion for religious reasons, where the patient is the parent of four minor children); In re Guardianship of Browning, 568 So.2d 4 (Fla.1990) (applying the strict scrutiny standard in addressing whether a surrogate may exercise an incompetent patient's right to decline medical treatment); In re T.W., 551 So.2d 1186 (Fla.1989) (applying the strict scrutiny standard in addressing parental consent for a minor to obtain an abortion); Public Health Trust v. Wons, 541 So.2d 96 (Fla.1989) (applying the strict scrutiny standard in addressing a patient’s right to refuse a life-sustaining blood transfusion); Winfield v. Div. of Pari-Mutuel Wagering, 477 So.2d 544 (Fla.1985) (applying the strict scrutiny standard in addressing the confidentiality of bank records). Cf. Renee B. v. Fla. Agency for Health Care Admin., 790 So.2d 1036 (Fla.2001) (declining to apply the strict scrutiny standard after determining that the right to privacy was not implicated by agency rules that barred public funding for abortions); City of N. Miami v. Kurtz, 653 So.2d 1025 (Fla.1995) (declining to apply strict scrutiny standard after determining that plaintiff's reasonable expectation of privacy was not implicated by administrative regulation requiring all job applicants to sign affidavit stating they had not used tobacco products during preceding year).

. There are three requirements that constitute the "irreducible constitutional minimum'' for standing. Vt. Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 771, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000). First, a plaintiff must demonstrate an "injury in fact,” which is "concrete,” "distinct and palpable,” and "actual or imminent.” Whitmore v. Arkansas, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). Second, a plaintiff must establish "a causal connection between the injury and the conduct complained of.” Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Third, a plaintiff must show “a ‘substantial likelihood' that the requested relief will remedy the alleged injury in fact.” Stevens, 529 U.S. at 771, 120 S.Ct. 1858.

. The dissent may be correct that the juveniles lack standing to assert their parents' rights. See Dissenting op. at 1127. However, because we base our holding on the fact that these ordinances impede the fundamental rights of the juveniles themselves, not the rights of their parents, we need not rule on whether the juveniles have standing to assert their parent's claims.

. Under the Tampa ordinance, a juvenile found to be in violation may be adjudicated a delinquent child and may be supervised by or committed to the Department of Juvenile Justice for up to six months and fined up to $1000. Parents or business operators found in violation can be incarcerated for up to six months and fined up to $1000. See Tampa, Fla., Code §§ l-6(a), 14-26(h). Under the Pinellas Park ordinance, juveniles are also subject to six months of supervision or commitment and parents to six months of incarceration for being in violation of the curfew. The Pinellas Park ordinance limits the fines to $500. See Pinellas Park, Fla., Code § 16-124(D)3, (F)2.

. The Pinellas Park ordinance does not provide penalties for business operators.

. Section 877.22(3), Florida Statutes (2002), provides that a minor who violates the model curfew statute "shall receive a written warning for her or his first violation.” A subsequent violation results in a civil infraction and the minor must pay a $50 fine for each violation. Section 877.23(3), Florida Statutes (2002), imposes the same civil infraction on a parent who knowingly permits a minor to violate section 877.22.

. The juveniles also contend that the ordinances violate their Fourth Amendment right to be free from unreasonable searches and seizures and their Fifth Amendment right to remain silent. In light of our conclusion that the ordinances do not pass strict scrutiny, we *1120 need not reach these Fourth and Fifth Amendment challenges to the ordinances.