DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CITIZENS FOR RESPONSIBLE DEVELOPMENT, INC.,**
a Florida not-for-profit corporation, and **HERBERT SIMPSON,**
Appellants,

v.

**THE CITY OF DANIA BEACH, FLORIDA, BROWARD COUNTY, FLORIDA** and **DANIA ENTERTAINMENT CENTER, LLC,**
a Delaware limited liability company,
Appellees.

No. 4D21-1306

[July 13, 2022]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Keathan Frink, Judge; L.T. Case No. CACE11-22597.

Michael E. Dutko, Jr. and Janine R. McGuire of Conrad & Scherer LLP, Fort Lauderdale, for appellants.

Andrea G. Amigo, George P. Roberts, Jr., and Lyman H. Reynolds, Jr. of Roberts Reynolds Bedard & Tuzzio, PLCC, West Palm Beach, for appellee, The City of Dania Beach, Florida.

Andrew J. Meyers, Joseph K. Jarone and Scott Andron, Broward County Attorneys, Fort Lauderdale, for appellee, Broward County, Florida.

John M. Mullin and Robert L. Scheppske III of Tripp Scott, P.A., Fort Lauderdale, for appellee, Dania Entertainment Center, LLC.

WARNER, J.

Appellants appeal a final judgment entered on their complaint for declaratory judgment and injunctive relief, challenging the procedures which the City of Dania Beach used to approve development agreements allowing appellee Dania Entertainment Center LLC to expand the Dania Jai Alai pari-mutuel facility. Appellants also sought declaratory judgment against Broward County disputing the county's comportment with its required review process for the Dania Jai Alai expansion. The trial court concluded that appellants lacked standing to pursue their claims because

they failed to show special damages under the test propounded in *Renard v. Dade County*, 261 So. 2d 832 (Fla. 1972). We disagree and find standing. Because appellants challenged the process employed to enact the development agreements, they were not required to show special damages to prove standing. We thus reverse the final judgment.

This case arises from development agreements entered into by the defendant City of Dania Beach ("city") and defendant Dania Entertainment Center ("DEC") to expand the Dania Jai Alai pari-mutuel facility. In 2006, the city entered into a development agreement with the facility's then-owner Aragon Group, Inc. ("Aragon"). The development agreement included plans to renovate the original Jai Alai facility and to build a new gaming facility on the property.

In 2007, defendant Broward County ("county") approved the plat for the Dania Jai Alai for the following uses: a 325,000 square foot gaming facility which included 100,000 square feet of casino, a 1,000 seat fronton, and 187,000 square feet of accessory commercial use. In addition, the county approved two other parcels on the plat for 54 single-family detached units and 1.159 acres of active park.

In 2011, DEC entered into a contract to purchase the facility from Aragon. DEC sought to "amend and restate" the existing development agreement between the city and Aragon. The proposed amended and restated agreement included plans provided for within the original development agreement, as well as additional features including a marina, commercial retail, a new casino, and two hotel towers. The city's attorney and outside counsel advised that the pari-mutuel facility was exempt from city regulations.

Prior to the city commission's meeting in 2011 on the proposed amended agreement, Mr. Sniezek of the Broward County Planning Council wrote a letter in response to the city's desire to confirm that it was not "required to allocate land use intensities under the 'Regional Activity Center' (RAC) land use designation on the Broward County Land Use Plan [] and located in the City" for the amended development. Mr. Sniezek stated in the letter:

> *Based on the information provided by you,* it is Planning Council staff's understanding that the proposed hotel and marina uses are located within lands designated as a pari-mutuel by the State of Florida. *Based on that information and in such context of Florida Statute 550.155(2), it would appear that the proposed use would qualify as a "capital improvement*

2

*proposed by a permitholder licensed under this chapter to a pari-mutuel facility existing on June 23, 1981."*

In consultation with the Planning Council Attorney and County Attorney's office, Planning Council staff has determined that the uses described in your correspondence are permitted *without a need to allocate land use intensities under the permitted uses of the RAC.*

Please note that *this finding is subject to review and agreement by the City of Dania Beach. In addition, the proposed uses must meet any other applicable requirements of Florida Statutes Chapter 550.*

(Emphasis added.) The statute referenced in the letter, section 550.155(2), Florida Statutes (2011), provides in pertinent part as follows:

*A capital improvement proposed by a permitholder* licensed under this chapter *to a pari-mutuel facility* existing on June 23, 1981, which capital improvement requires, pursuant to any municipal or county ordinance, resolution, or regulation, the qualification or approval of the municipality or county wherein the permitholder conducts its business operations, *shall receive approval unless the municipality or county is able to show that the proposed improvement presents a justifiable and immediate hazard to the health and safety of municipal or county residents,* provided the permitholder pays to the municipality or county the cost of a building permit *and provided the capital improvement meets the following criteria*:

(a) The improvement does not qualify as a development of regional impact as defined in s. 380.06; and

(b) The improvement is contiguous to or within the existing pari-mutuel facility site.

(Emphasis added.)

At the city commission's meeting in August 2011, city staff recommended approving the 2011 amended development agreement with DEC, and the public had an opportunity to comment. After public comment, the city commission voted unanimously to approve the 2011 development agreement. Review under the development code was not used for approval. No other public meetings were held.

After the approval, the city and DEC entered into the agreement. The agreement stated that the city had determined the proposed improvements did not present an immediate hazard to the health and safety of the city's residents. The county was not a party to the agreement.

Litigation began in 2011 when Citizens for Responsible Development ("CFRD") and Herbert Simpson (collectively "plaintiffs") sued the city for declaratory judgment and injunctive relief. As alleged in its complaint, CFRD is a non-profit public interest organization in Broward County whose membership includes residents of Dania Beach who are adversely affected by the expansion of Dania Jai Alai and Casino and surrounding area authorized by the development agreement. Simpson is a legally blind resident living within one mile of Dania Jai Alai. The complaint sought a declaration that the approved, amended development agreement of 2011 was void because the city failed to comply with the Florida Local Government Development Agreement Act, sections 163.3220–163.3243, Florida Statutes (2011). Plaintiffs sought an injunction to compel the city to comply with the Act. DEC intervened in the proceedings.

While the suit was pending, in 2011 and 2012, the county approved two plat note amendments to the Dania Jai-Alai Plat. The 2011 plat note amendment added several approved uses, including an additional 15 acres of pari-mutuel facility which could include 500 hotel rooms, 60 marina slips and 45,000 square feet of commercial use. The 54 dwelling units and the park were to be deleted from the plat. According to the supporting material, the plat was subject to the "Dania Beach Regional Activity Center" ("RAC"). However, the planning council in consultation with its attorney and the county attorney determined that based on Chapter 550.155, Florida Statutes,[1] the pari-mutuel facility uses were exempt from being allocated as part of the RAC. The 2012 plat note effectuated changes to comply with the Florida Department of Transportation's conditions of approval of the 2011 plat note amendment.

Then in 2014, DEC sought a new development agreement, the "second amended agreement," that added a multi-story parking garage and a banquet hall, in addition to the changes from the 2011 amended agreement. A public hearing was held on August 26, 2014, with advance notice published in the newspaper, posted at City Hall, and mailed to over 6,000 surrounding landowners. Members of the public were allowed to speak, including Simpson, who expressed concern about the traffic and

---

[1] No changes to section 550.155, Florida Statutes (2011), were made in 2012 or later. The statute has not been amended since 2000.

being able to cross the street.  After notice, a second public hearing was held.

A third hearing was held, at which CFRD's counsel objected to the meeting as not being noticed as a quasi-judicial hearing.  Counsel attempted to offer evidence through documents and testimony that the development as currently proposed presented an immediate hazard to health, safety, or welfare.  The evidence was rejected.  At the conclusion of the meeting, the second amended agreement was approved and then executed by the city and DEC.  The county was not a party to the second amended agreement.

After the approval, CFRD and Simpson amended their complaint to allege that three sets of development laws were improperly ignored by the city: the Development Agreement Act, sections 163.3220–163.3243, Dania Beach Unified Land Development Code, and Broward County Development and Land Use Codes.  Plaintiffs alleged that the city's hearings in 2011 and 2014 did not comply with Chapter 163, Florida Statutes,[2] and thereby denied the public the ability to participate in the review imposed upon DEC.  They also alleged that the city did not comply with the review requirements of its own code and development review process to determine the expansion's impact on the city and its residents.  Plaintiffs further alleged that the development was inconsistent with the city's code.  Finally, they alleged that the city improperly gave "carte blanche" to DEC based on section 550.155(2), Florida Statutes.

In the complaint, plaintiffs sought declaratory judgment that section 550.155 did not apply to the Dania Jai Alai expansion, and that the 2011 amended agreement was void as a result.  Similarly, they sought a declaratory judgment that the 2014 agreement also relied on section 550.155 and thus was void.  In another count, they sought a declaration that section 550.155 was void as an unconstitutional special law.

Plaintiffs sought injunctive relief in two other counts pursuant to section 163.3243, Florida Statute, requesting the court to declare the official act of approving the development agreements in 2011 and 2014 without following the public notice and hearing requirements of section 163.3225 to be void.  They sought to compel the city to comply with the provisions of section 163.3225.

---

[2] No amendments were made to the pertinent sections of Chapter 163 cited within this opinion during the intervening years between 2011 and 2014.

Plaintiffs also joined the county as a defendant. Plaintiffs alleged the county "dropped the ball too" because the county misinterpreted section 550.155, Florida Statutes, to exempt existing pari-mutuels from county land use regulations and review processes. Plaintiffs further alleged that the county did not investigate whether the Dania Jai Alai facility complied with section 550.155.

Plaintiffs sought a declaratory judgment with respect to the 2011 and 2014 agreements that the county erroneously relied on section 550.155 because that section did not apply or the county failed to comply with that section by not applying the county land use code or engaging in developmental review in connection to the 2011 and 2014 development agreements.

All defendants answered, asserting multiple defenses, including that plaintiffs lacked standing to assert their claims. Ultimately cross-motions for summary judgment were filed. While the motions raised several grounds for summary judgment, the trial court granted summary judgment in favor of the defendants, concluding that plaintiffs lacked standing.

In its order, the court found no standing because plaintiffs failed to show an "injury-in-fact." Also, plaintiff CFRD failed to demonstrate associational standing by showing a "substantial number of [CFRD's] members are substantially affected by the approval of the redevelopment." Citing to *Renard v. Dade County*, 261 So. 2d 832 (Fla. 1972), the court found that the plaintiffs failed to meet one of the specific standing requirements of land use cases, *i.e.*, that a party seeking to enforce a valid zoning ordinance has to establish special damages. The court found that neither plaintiff had established special damages. From this order, CFRD and Simpson appealed.

The standard of appellate review applicable to the grant of summary judgment is de novo. *Volusia Cnty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000). "Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law." *Id.* Standing is a question of law which is reviewed de novo. *DeSantis v. Fla. Educ. Ass'n*, 306 So. 3d 1202, 1213 (Fla. 1st DCA 2020).

The trial court correctly identified *Renard* as the seminal case on standing in land use cases for attacking zoning ordinances.[3] There, the supreme court addressed the following certified question of great public importance:

> The standing necessary for a plaintiff to (1) enforce a valid zoning ordinance; (2) attack a validly enacted zoning ordinance as not being fairly debatable and therefore an arbitrary and unreasonable exercise of legislative power; and (3) attack a void ordinance, i.e., one enacted without proper notice required under the enabling statute or authority creating the zoning power.

*Renard*, 261 So. 2d at 834. After a review of the case law, the court answered by stating the requirements for each category of case:

> The question certified to this Court, set out supra, has three parts. Part (1) deals with standing to enforce a valid zoning ordinance. The Boucher[4] rule requiring special damages still covers this type of suit. . . .
>
> Part (2) of the question certified to this Court deals with standing to attack a validly enacted zoning ordinance as being an unreasonable exercise of legislative power. . . . [P]ersons having a legally recognizable interest, which is adversely affected by the proposed zoning action, have standing to sue.
>
> Part (3) of the question certified deals with standing to attack a zoning ordinance which is void because not properly enacted, as where required notice was not given. Any affected resident, citizen or property owner of the governmental unit in question has standing to challenge such an ordinance.

---

[3] The development agreements constitute zoning ordinances within the meaning of the City Code and section 163.3225.

[4] *Boucher v. Novotny*, 102 So. 2d 132, 135 (Fla. 1958) ("We, therefore, align ourselves with the authorities which hold that one seeking redress, either preventive or corrective, against an Alleged violation of a municipal zoning ordinance must allege and prove special damages peculiar to himself differing in kind as distinguished from damages differing in degree suffered by the community as a whole.").

*Id.* at 837–38. *Renard* cited *Rhodes v. City of Homestead*, 248 So. 2d 674 (Fla. 3d DCA 1971), in a footnote as support for standing to attack a zoning ordinance as void because it was not properly enacted.[5] *Id.* at 837 n.14.

In *Rhodes,* the Third District said:

> The rule or ground [that the plaintiffs must show a special damage to attack a zoning decision] presented by defendants in moving to dismiss has no application where a person affected seeks to challenge such action of the city on the ground that the action was illegal, *or that the proceedings of the city board or council which resulted in such action were conducted contrary to provisions of the charter,* such as by failure to the city to give notice required by its charter, as alleged here.

*Id.* at 674–75 (emphasis supplied); *see also Parsons v. City of Jacksonville,* 295 So. 3d 892, 894 (Fla. 1st DCA 2020) (stating no special injury required for standing to attack void ordinances). Similarly, in *Upper Keys Citizens Association, Inc. v. Wedel,* 341 So. 2d 1062 (Fla. 3d DCA 1977), the court held that an attack on a variance on the grounds that it was illegally enacted and void where the zoning regulations of the county were not followed, did not require a plaintiff to allege a special injury in order to have standing. Therefore, the plaintiff, a non-profit corporation whose members were citizens of the county had standing to sue to declare the variance illegal and void. *Id.* at 1064.

This is precisely what the plaintiffs here claim, *i.e.,* that the city did not follow the process of their land use code or the Local Government Development Agreement Act. They also allege that there was inadequate notice with respect to the approval of both the 2011 and 2014 development agreements. These allegations are not challenges to the substantive

---

[5] City argues that plaintiffs' reliance upon the distinctions in *Renard* as to standing requirements that do not require proof of special damages were disavowed in *Herbits v. City of Miami*, 207 So. 3d 274 (Fla. 3d DCA 2016), because those distinctions were impliedly overruled. In *Herbits*, the Third District cited to its own decision in *Renard v. Dade County*, 249 So. 2d 500 (Fla. 3d DCA 1971), rather than the supreme court decision. We do not agree with *Herbits*, that the *Renard* distinctions have been *sub silento* overruled by the supreme court. First, the supreme court does not intentionally overrule itself *sub silento. See Puryear v. State*, 810 So. 2d 901, 905 (Fla. 2002). Second, *Herbits* relied on *Solares v. City of Miami*, 166 So. 3d 887 (Fla. 3d DCA 2015), but that case dealt with taxpayer standing to challenge a lease negotiated by the city, not a zoning case.

zoning decision but challenges to the procedure for approving the development agreements. Pursuant to *Renard*, any affected resident or property owner has standing to challenge an ordinance when attacking it for voidness.

Thus, plaintiffs must show that they are "affected" by the ordinance, which is a lesser showing than requiring special damage. Simpson showed that he lives relatively close to the development and has issues with the increased traffic causing him danger due to him being legally blind. CFRD has alleged that it has members impacted by the development, including residents of the city of Dania and one member who resides within 300 feet of the facility. Moreover, the non-profit is a public interest company interested in responsible development in the county. That in and of itself provides standing. *See Save Brickell Ave., Inc. v. City of Miami*, 393 So. 2d 1197 (Fla. 3d DCA 1981); *Upper Keys Citizens*, 341 So. 2d at 1064.

Plaintiffs also have standing under section 163.3243, Florida Statutes, with respect to their claims against DEC and city, except for the constitutional challenge to section 550.155(2). Section 163.3243, Florida Statutes, provides:

> Any party or aggrieved or adversely affected person as defined in s. 163.3215(2) may file an action for injunctive relief . . . to enforce the terms of a development agreement or to challenge compliance of the agreement with ss. 163.3220-163.3243.

Section 163.3215(2), Florida Statutes, in turn, defines "aggrieved or adversely affected party" as follows:

> [A]ny person or local government that will suffer an adverse effect to an interest protected or furthered by the local government comprehensive plan, including interests related to health and safety, . . . densities or intensities of development, transportation facilities, health care facilities, equipment or services, and environmental or natural resources. The alleged adverse interest may be shared in common with other members of the community at large but must exceed in degree the general interest in community good shared by all persons.

"The particular breadth of standing authorized by the statute reflects its primary purpose—'to remedy the governmental entity's failure to comply with the established comprehensive plan,' not 'to redress damage to particular plaintiffs.'" *Imhof v. Walton Cnty.*, 328 So. 3d 32, 46 (Fla. 1st

DCA 2021) (quoting *Nassau Cnty. v. Willis*, 41 So. 3d 270, 276 (Fla. 1st DCA 2010).

"Under section 163.3215 citizen enforcement is the primary tool for insuring consistency of development decisions with the Comprehensive Plan." *Pinecrest Lakes, Inc. v. Shidel*, 795 So. 2d 191, 202 (Fla. 4th DCA 2001). "[S]ection 163.3215 ha[s] liberalized standing requirements and demonstrate[s] 'a clear legislative policy in favor of the enforcement of comprehensive plans by persons adversely affected by local action.'" *Id.* at 200 (quoting *Southwest Ranches Homeowners Ass'n v. Broward Cnty.*, 502 So. 2d 931, 935 (Fla. 4th DCA 1987)). "[T]he legislature enacted section 163.3215 to ensure the standing for any person who 'will suffer an adverse effect to an interest protected . . . by the . . . comprehensive plan.'" *Parker v. Leon Cnty.*, 627 So. 2d 476, 479 (Fla. 1993) (quoting § 163.3215(2), Fla. Stat. (1985)).

Standing under section 163.3215 differs from standing under the *Renard* class of cases requiring special damage. *See City of Ft. Myers v. Splitt*, 988 So. 2d 28 (Fla. 2d DCA 2008). *Splitt* explained the difference as follows:

> Under section 163.3215(2), standing may be based on the showing of an adverse effect on an interest that "*exceed[s] in degree* the general interest in community good shared by all persons." (Emphasis added.) The more restrictive *Renard* standard requires a showing of special damages "'*differing in kind* as distinguished from damages differing in degree suffered by the community as a whole.'" 261 So. 2d at 835 (emphasis added) (quoting *Boucher*, 102 So. 2d at 135).

988 So. 2d at 32. Thus, standing under the statute falls somewhere between those cases requiring special damage under *Renard* and those cases in which the ordinance is attacked as illegally enacted or void, which require only that the plaintiff be affected.

Given the legislative policy of favoring enforcement of comprehensive plans by persons adversely affected, we conclude that plaintiff Simpson has standing to assert the statutory claims. Simpson's proximity to the facility and the increased traffic that the expansion will bring makes his safety at risk due to his legal blindness.

With respect to the standing of CFRD, *Imhof v. Walton County*, 328 So. 3d 32 (Fla. 1st DCA 2021), is instructive. There, the trial court denied standing to a non-profit corporation that was founded to ensure that land

developers complied with Walton County's comprehensive plan, and the individual appellants were members of the organization. *Id.* at 46. The trial court dismissed the non-profit corporation for lack of standing because it failed to show that it possessed any interest in the development project beyond that shared by all persons. *Id.*

On appeal, the court explained the broad standing of section 163.3215(2), stating:

> The particular breadth of standing authorized by the statute reflects its primary purpose—"to remedy the governmental entity's failure to comply with the established comprehensive plan," not "to redress damage to particular plaintiffs." *Nassau County v. Willis*, 41 So. 3d 270, 276 (Fla. 1st DCA 2010) (quoting *Save the Homosassa River All., Inc. v. Citrus County*, 2 So. 3d 329, 340 (Fla. 5th DCA 2008)).

328 So. 3d at 46. The limitation on standing pursuant to the statute is one of degree:

> [S]tanding under the statute stems from the significance of the interest to the party, not the particularity or distinctiveness of the interest. *See Willis*, 41 So. 3d at 277 (highlighting that the statute "does not require an adverse interest different in kind" or different in terms of "the fundamental nature or quality" of the interest, just that "the *intensity* of the activity or interest must exceed that of the general public" (emphasis supplied)). A party can establish standing under the statute by showing that it engages in activities related to a protected interest that set it apart from the community at large. *Cf. Willis*, 41 So. 3d at 278 (agreeing that plaintiffs had standing because they engaged in recreational activities tied to the natural resources of the affected area).

328 So. 3d at 46–47. The court concluded that the corporation as a watchdog group was "more animated or motivated by an affected interest protected by the plan than the average member of the public" which was sufficient to show an elevated degree of interest. *Id.* at 47. Thus, the court found that the trial court erred, and the corporation had standing. *See also Homosassa River All., Inc. v. Citrus Cnty.*, 2 So. 3d 329, 337 (Fla. 5th DCA 2008) ("[A]n organization has an interest that is greater than 'the general interest in community well-being' when the organization's primary purpose includes protecting the particular interest that they allege will be

11

adversely affected by the comprehensive plan violation."). Based on the reasoning of *Imhof*, we conclude that CFRD has standing to assert its Chapter 163 claims.

Finally, the county asserts that because it was not a party to the development agreements, the plaintiffs did not show that they suffered a redressable injury traceable to it because the county did not approve the development agreements. However, the plaintiffs' claim is that the county failed to conduct the review process required by county ordinances for development applications because it erroneously relied on section 550.155 to exempt review. This, too, is a process argument which the plaintiffs had standing to raise. The county also argued that there was no adversity between the parties. Because the order appealed was confined to the issue of standing, we do not reach this issue on appeal.

The trial court erred in concluding that the plaintiffs did not have standing to pursue the claims made that the defendant governmental entities failed to follow their own procedures and ordinances and to follow statutory requirements for development review. We thus reverse and remand for further proceedings.

*Reversed and remanded.*

CIKLIN, J., concurs.
MAY, J., dissents with opinion.

MAY, J., dissenting.

I approach this case from a different vantage point than the majority and thereby reach a different conclusion. I therefore dissent.

The plaintiffs sought declaratory and injunctive relief arguing that: (1) section 550.155, Florida Statutes (2011), did not apply to the Dania Jai Alai expansion; (2) the 2011 and 2014 development agreements were void as noncompliant with the City of Dania's zoning ordinances and Broward County's land use code; and (3) section 550.155 was an unconstitutional special law. They alleged the county did not investigate whether the Dania Jai Alai expansion complied with section 550.155.

The Dania Entertainment Center, LLC ("DEC") and the City of Dania ("City") responded that section 550.155 applied and exempted the Jai Alai expansion and development agreements from the City's relevant zoning ordinances. Broward County ("County") claimed to be an outsider to this

dispute without control over, or involvement in, the development agreements. I agree with the DEC, the City, and the County.

But first things first. "Any litigant must demonstrate that he or she has standing to invoke the power of the court to determine the merits of an issue." *Giuffre v. Edwards*, 226 So. 3d 1034, 1038 (Fla. 4th DCA 2017) (quoting *Vaughan v. First Union Nat'l Bank of Fla.*, 740 So. 2d 1216, 1217 (Fla. 2d DCA 1999)). "Standing depends on whether a party has a **sufficient** stake in a justiciable controversy, **with a legally cognizable interest** which would be affected by the outcome of the litigation." *Id.* at 1038-39 (emphasis added) (quoting *Weiss v. Johansen*, 898 So. 2d 1009, 1011 (Fla. 4th DCA 2005)).

Our supreme court has articulated the three requirements for standing.

> First, a plaintiff must demonstrate an injury in fact, which is concrete, distinct and palpable, and actual or imminent. Second, a plaintiff must establish a causal connection between the injury and the conduct complained of. Third, a plaintiff must show a substantial likelihood that the requested relief will remedy the alleged injury in fact.

*State v. J.P.*, 907 So. 2d 1101, 1113 n.4 (Fla. 2004) (citations omitted). In short, standing requires injury-in-fact, causation, and redressability. *Id.* As the trial court found, the plaintiffs failed to make the requisite showing. I agree.

The majority and the trial court rely on *Renard v. Dade County*, 261 So. 2d 832 (Fla. 1972), the majority calling it the seminal case on standing in land use cases for attacking zoning ordinances. *Renard* addressed three types of attacks on zoning ordinances. It did not address a development agreement.

In its order, the trial court focused on Part 1 of the *Renard* opinion and held that the plaintiffs failed to establish a "special injury" because the individual plaintiff's alleged injury (increased traffic), upon which the association plaintiff relied, did not relate to the property where the individual plaintiff resides. The court also found the individual plaintiff did not suffer an "injury-in-fact."

The majority now focuses on Part 3 of the *Renard* opinion, which "deals with standing to attack a zoning ordinance which is void because not properly enacted . . ." *Id.* at 837-38. The majority then conflates development agreements with zoning ordinances in a footnote without

citation to authority and characterizes the plaintiffs' complaint as an attack on the process used to approve the development agreements. They do so to avoid any requirement of special damages under *Renard*.

But let's look at what the plaintiffs actually alleged.

- Since 2011, the City repeatedly has either intentionally or mistakenly ignored the actual requirements of State law as it applies to the Dania Jai Alai proposed mega-expansion.

- The uses contained within the mega-expansion are not permitted within the zoning districts applicable to the property.

- The City failed to apply the land development regulations for the applicable zoning districts, so as to ensure that the uses contained within the mega-expansion are consistent with the community's character.

These are allegations of the City's failure to comply with their own ordinances, which the plaintiffs now seek to enforce. That sounds suspiciously like Part 1 of *Renard*, which addresses standing to enforce a valid zoning ordinance. To have that standing, the plaintiffs must show a "special injury."

*Renard* dealt specifically with zoning ordinances, not development agreements. Development agreements and zoning ordinances are not the same. "[A] 'development agreement' has been defined as 'a contract between a [local government] and a property owner/developer, which provides the developer with vested rights by freezing the existing zoning regulations applicable to a property in exchange for public benefits.'" *Pres. Palm Beach Pol. Action Comm. v. Town of Palm Beach,* 50 So. 3d 1176, 1179 (Fla. 4th DCA 2011) (second alteration in original) (quoting *Morgran Co. v. Orange County,* 818 So. 2d 640, 643 (Fla. 5th DCA 2002)).

A zoning ordinance is a local legislative enactment, not a contract. *See Lee County v. Morales*, 557 So. 2d 652, 655 (Fla. 2d DCA 1990) (explaining zoning is a legislative function). And, in my view, if *Renard* applies, the plaintiffs' complaint is really a request to enforce the City's zoning ordinances on the development agreements. For such a request, *Renard* requires the showing of a special injury, something the plaintiffs simply don't possess. *See Renard,* 261 So. 2d at 834.

14

I suggest the three-part standing test of *J.P.* applies: injury-in-fact, causation, and redressability. If *Renard* applies, Part 1, not Part 3, articulates the standing requirements.

Plaintiffs claim that because the individual plaintiff is legally blind, increased traffic resulting from the DEC's capital improvement creates the required injury-in-fact. But it doesn't. The injury alleged by the individual plaintiff is purely conjectural – being hit by a car nearly a mile from his home. It is not an "injury in fact, which is concrete, distinct and palpable, and actual or imminent." *J.P.*, 907 So. 2d at 1113 n.4. And it is certainly not a "special injury" under Part 1 of *Renard*.

Indeed, the Second District has held that increased traffic is "only damage[] differing in degree from [that] suffered by the community as a whole and [is] not [a] special damage[] . . . differ[ent] in kind." *Skaggs-Alberton's Prop., Inc. v. Michels Belleair Bluffs Pharmacy, Inc.*, 332 So. 2d 113, 117 (Fla. 2d DCA 1976). To reach this conclusion, the Second District relied on a Georgia decision, which explained:

> The mere increase in traffic congestion adjacent to one's property as the result of improvements erected on nearby property and the attendant inconvenience resulting therefrom which are damages suffered alike by all property owners similarly situated, does not give to one individual such a substantial interest in the decision of the Board of Adjustment permitting the improvement as to authorize an appeal therefrom. Such increase in traffic congestion and attendant difficulties in finding parking places are matters which address themselves to the police authorities of the municipality rather than to the zoning authorities.
>
> . . . .
>
> Such an inconvenience is a condition incident to urban living.

*Id.* (quoting *Victoria Corp. v. Atlanta Merch. Mart, Inc.*, 112 S.E.2d 793, 795 (Ga. Ct. App. 1960)). The individual plaintiff has no injury in fact, no special injury under *Renard*, and no standing.

For the association plaintiff to establish standing, it must prove: "(1) A substantial number of the [a]ssociation's members, although not necessarily a majority, are substantially affected by the challenged rule; (2) The subject matter of the rule is within the association's general scope of interest and activity; and (3) The relief requested is the type appropriate

for a trade association to receive on behalf of its members." *Hillsborough County v. Fla. Rest. Ass'n*, 603 So. 2d 587, 589 n.1 (Fla. 2d DCA 1992) (quoting *Fla. Home Builders Ass'n v. Dep't of Labor & Emp. Sec.*, 412 So. 2d 351, 353-54 (Fla. 1982)).

Here, the association plaintiff also failed to show standing. The trial court determined: "[T]here is no record evidence that a substantial number of its members are or will be substantially affected by the [d]efendants' actions." At the hearing on the summary judgment motions, the association relied on the individual plaintiff, and suggested another member lives within 300 feet of the facility. But as explained above, the individual plaintiff lacks standing and so does the association.

Yet, the majority suggests the plaintiffs showed that they are "affected" by the ordinance (not the development agreements) because the individual plaintiff "lives relatively close" (three quarters of a mile away) "and has issues with the increased traffic causing him danger due to him being legally blind." That just isn't enough under *J.P.*, 907 So. 2d at 1113 n.4 or *Renard*, 261 So. 2d at 834. In short, the association plaintiff failed to show that even one member suffered the requisite "injury-in-fact" let alone that a **substantial** number of its members were **substantially** affected by the development agreements.

- ### *Standing Under Section 163.3243*

The majority and the plaintiffs alternatively claim the plaintiffs have standing, pursuant to section 163.3243, Florida Statutes (2011). This provision provides no better standing for the plaintiffs than the general standing rules. Section 163.3243 provides:

> Any party or aggrieved or adversely affected person as defined in s. 163.3215(2) may file an action for injunctive relief in the circuit court where the local government is located to enforce the terms of a development agreement . . . .

*Id.*

An aggrieved or adversely affected party is one who "will suffer an adverse effect to an interest protected or furthered by the local government comprehensive plan . . . [that] may be shared in common with other members of the community at large **but must exceed in degree the general interest in community good shared by all persons**." § 163.3215(2), Fla. Stat. (2019) (emphasis added). Section 163.3215(2) also requires a showing of an injury different in degree from that suffered by

16

the community in general. *Coastal Dev. of N. Fla., Inc. v. City of Jacksonville Beach*, 788 So. 2d 204, 209 n.25 (Fla. 2001).

The majority claims that standing under section 163.3215 differs from *Renard*'s standing requirements. I don't dispute that premise, but I do dispute the majority's application of the statute in this case. For while the statute does not use the term "special injury," it does expressly state that the adverse effect "must exceed in degree the general interest in community good shared by all persons." It simply must be "more" than any injury suffered by the community as a whole.

In analyzing section 163.3215, our supreme court stated that "when challenging a zoning decision, an affected person must allege an injury." *Coastal Dev. of N. Fla., Inc.*, 788 So. 2d at 209 n.25; *see also* § 163.3215, Fla. Stat. (2019). For the same reasons noted above, neither the individual nor the association plaintiff can show an injury which exceeds that of the general public. The majority acknowledges as much when it quotes *Imhof v. Walton County*, 328 So. 3d 32 (Fla. 1st DCA 2021), for the proposition that standing under this statutory provision comes from the "**significance** of the interest to the party . . . ." Neither of the plaintiffs have an interest more significant than the public at large.

Indeed, the individual plaintiff's claim is that the development agreements will lead to increased traffic on nearby highways. Yet, the individual plaintiff lives three quarters of a mile away from the pari-mutuel facility and has suffered no actual or imminent injury from the alleged increase in traffic. *See Victoria Corp.*, 112 S.E.2d at 795 (explaining that to provide standing for "such an inconvenience would give to any resident or property holder of an urban area the right to override the decisions of boards of zoning appeals any time such property owner or resident disagreed with such decision").[6] The plaintiffs have no standing under section 163.3215.

- ### *Broward County*

The County adopts the positions of the City and the DEC but has its own unique position with regard to the litigation. It argues in essence that it is a stranger to the development agreements, took no part in them, and has no control over the City's decisions. It also argues that regardless of

---

[6] With regard to section 163.3243's application to the County, there simply is none. That section relates to *injunctive relief* and the plaintiffs did not sue the County for such relief. Accordingly, this statute is inapplicable to the County.

the "special injury" or "injury in fact" requirement, the plaintiffs cannot establish the second and third requirements for standing: causal connection and redressability. The County relies on *DeSantis v. Fla. Educ. Ass'n*, 306 So. 3d 1202 (Fla. 1st DCA 2020).

In *DeSantis*, plaintiffs sued several state officials, including Governor DeSantis, because they disagreed with the State's plan for reopening schools during the pandemic. *Id.* at 1208. The First District Court of Appeal concluded the plaintiffs failed to satisfy the causation and redressability requirements of standing. *Id.* at 1214. Individual school districts, not the state officials, had the discretion to return to in-person learning and so were the actual "cause" of the plaintiffs' alleged injuries. *Id.* The Governor could not be the cause.

The plaintiffs also failed to satisfy the redressability requirement because whatever the outcome of their lawsuit, "the choice of how to deliver education to students remain[ed] with Florida's school boards." *Id.* This is just another reason why the majority got the standing issue wrong in this case.

The County did not cause the plaintiffs' alleged injury, which relates solely to the City's allegedly defective approval of the development agreements. The DEC and the City are the parties to the development agreements and the cause, if any, of an alleged injury. The County played no role in the development agreements. And to the extent the plaintiffs rely on the 2011 Sniezek Opinion, they are misguided.

The 2011 Sniezek Opinion was issued by the Planning Council—not the County. They are different governmental entities, and the County had no control over, or responsibility for, the actions of either the Planning Council or Mr. Sniezek.

The plain language of both development agreements indicated the City "confirm[ed]" that an allocation of use from the RAC was not required and then explained that this conclusion was "consistent with" Mr. Sniezek's opinion. The development agreements themselves do not indicate that the Sniezek Opinion controlled the City's actions. And an adverse decision against the County would not redress the plaintiffs' alleged injury because the County has no control over the City, the DEC, or the development agreements.

For all of these reasons, the plaintiffs have no standing to sue the County.

18

- ***The Tipsy Coachman Rule***

Limiting its discussion to the standing issue, which is the only one the trial court addressed, the majority does not reach the other issues raised by the defendants in their motions for summary judgment. And yet, the defendants alternatively moved for summary judgment on the basis that the development agreements were properly approved pursuant to section 550.155, obviating the need for compliance with the City's zoning ordinances. Because the Tipsy Coachman rule allows us to affirm a trial court if its decision is supported by a different reason properly raised, I think it important to address this alternative basis for an affirmance. *Dade Cnty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638 (Fla. 1999).

I would begin with the simple premise that section 550.155(2), Florida Statutes (2011), presupposes approval of a pari-mutuel facility's capital improvement with certain caveats. That section provides:

> *A capital improvement proposed by a permitholder* licensed under this chapter *to a pari-mutuel facility* existing on June 23, 1981, which capital improvement requires, pursuant to any municipal or county ordinance, resolution, or regulation, the qualification or approval of the municipality or county wherein the permitholder conducts its business operations, *shall receive approval unless the municipality or county is able to show that the proposed improvement presents a justifiable and immediate hazard to the health and safety of municipal or county residents*, provided the permitholder pays to the municipality or county the cost of a building permit *and provided the capital improvement meets the following criteria*:
>
> (a) The improvement does not qualify as a development of regional impact as defined in s. 380.06; and
>
> (b) The improvement is contiguous to or within the existing pari-mutuel facility site[.]

§ 550.155(2), Fla. Stat. (2011) (emphasis added).

Per the statute, approval is not automatic if the municipality or county shows "that the proposed improvement presents a justifiable and immediate hazard to the health and safety of municipal or county residents," and provided the capital improvement "does not qualify as a development of regional impact," and "is contiguous to or within the existing parimutuel facility site." *Id.* Neither the City nor the County even

19

attempted to claim the proposed capital improvement presented a justifiable and immediate hazard to the health and safety of its residents. It did not qualify as a development of regional impact, and it is contiguous to or within the existing parimutuel facility site. The DEC's capital improvement was therefore subject to approval pursuant to section 550.155(2). Case closed.

The plaintiffs suggest however that section 550.155(2) is unconstitutional because it is a special law that was impermissibly enacted as a general law in violation of Florida's Constitution. Once again, the plaintiffs are mistaken.

"The constitutionality of a legislative act may be challenged only by one whose rights are, or will be, adversely affected by it." *County of Pasco v. J. Dico, Inc.,* 343 So. 2d 83, 84 (Fla. 4th DCA 1977). That means the injury must be direct to the plaintiff's property and the adverse effects must flow directly from the enforcement of the unconstitutional law. Such is not the case for these plaintiffs.

Perhaps more importantly, any challenge to the section's constitutionality has long since been time-barred. There is a four-year statute of limitations for such constitutional challenges. *See Milan Inv. Grp., Inc. v. City of Miami*, 50 So. 3d 662, 664 (Fla. 3d DCA 2010). Section 550.155(2) was enacted over twenty years ago on July 1, 2000. The statute of limitations bars any constitutional attack.

So, how does a resident (not a property owner) living three quarters of a mile from a pari-mutuel site have standing in this case? He does not and neither does an association claiming the resident is the association's key to the gates of standing.

Perspective is everything in this case. Mine just happens to differ from the majority. I would affirm.

\*   \*   \*

**Not final until disposition of timely filed motion for rehearing.**