DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**RAMSEY C. FRANK,**
Appellant,

v.

**PETER JOHN CONLAN,** in his individual capacity and
as personal representative of the **ESTATE OF SUZANNE FRANK**,
**JOHN CONLAN III,** and **JANICE BYRNE,**
Appellees.

Nos. 4D2024-1876 and 4D2024-2423

[April 1, 2026]

Consolidated appeals from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Charles E. Burton, Judge; L.T. Case No. 502022CP006727XXXXNB.

Bill Boyes of Boyes, Farina, Matwiczyk, Palm Beach Gardens, and Matthew Sarelson and Zachary Stoner of Dhillon Law Group, Inc., West Palm Beach, for appellant.

Rebecca Mercier Vargas and Stephanie L. Serafin of Kreusler-Walsh, Vargas & Serafin, P.A., Palm Beach Gardens, and Theodore S. Kypreos and Alexander L. Brams of Jones Foster P.A., West Palm Beach, for appellees Peter John Conlan, individually, John Conlan III, and Janice Byrne.

Nichole J. Segal of Burlington & Rockenbach, P.A., West Palm Beach, for appellee Peter John Conlan, as personal representative of the Estate of Suzanne Frank.

LOTT, J.

This probate appeal, as is perhaps the case with many such appeals, arises from a rather unique set of facts.

From 10,000 feet: the Decedent executed a will in January 2022. In addition to some smaller bequests (not at issue here), the Decedent's estate plan utilized a separate trust containing the bulk of the estate to leave 75%

to the Decedent's son (the "Son" or "Appellant") and 25% to the Decedent's three siblings (the "Siblings" or "Appellees").

The Decedent decided to modify that structure as a result of a contract with her former husband in June 2022 and transferred much of the trust assets to a new holding company, intending to execute a new will that passed her assets in that same proportion directly through the will instead of a trust. She executed that will in December 2022, two days before she passed away.

On appeal, the Son now challenges the December 2022 Will, raising questions about the Decedent's testamentary capacity to execute the will at that time. The Son also challenges the subsequent orders admitting the December 2022 Will to probate and appointing one of the Siblings as the personal representative (the "PR Sibling").

The Siblings, in an unusual twist, oppose the Son's challenge and argue that the Son lacks standing to contest the December 2022 Will because he would be much worse off—and they, in turn, would be much better off—if he succeeds in his challenge. If the January 2022 Will is reinstituted, they argue, the bulk of the estate assets would pass to *them*, because much of the trust assets contemplated by that will have been transferred. (Again, they oppose this outcome.)

The Son responds that he is actually better off if he succeeds in contesting the December 2022 Will, because if the January 2022 Will is reinstituted and the Siblings take more assets under it, he is left with a creditor claim against the Siblings arising from the June 2022 contract, which, if successful, would push more net tax burden onto the Siblings, and less tax burden onto him.

How that all plays out is neither here nor there, for now. The question is whether the Son has standing to contest the will—or, more aptly put, the two questions are (1) whether he has standing, and (2) whether he is an "interested person" as the term is defined in section 731.201(23), Florida Statutes (2022), with the statutory ability to contest the will.

We hold, under the very unique set of facts here, both that the Son has standing and that he is an "interested person" who may contest the December 2022 Will. We accordingly reverse the probate court's grant of summary judgment on that ground and remand for trial on the question of whether the Decedent lacked the testamentary capacity to execute the

December 2022 Will.[1]  We also reverse the orders admitting the December 2022 Will to probate and appointing the PR Sibling as the personal representative.

## I. Background

### A. Before the Petition

The Decedent and her former husband divorced in October 2021.  Their marital settlement agreement required the former husband to create and fund an irrevocable trust with the Decedent as the sole lifetime beneficiary. The Trust provided that the Son would receive at least 75% of the Trust's net assets upon the Decedent's death, after payment of death taxes and administrative expenses.  The Trust provided the Decedent with the power of appointment over the remaining 25% of the Trust's net assets.  Any property not otherwise disposed of would pass equally to the Decedent's siblings.

In January 2022, the Decedent executed a will prepared by her estate planning attorney.  We'll call this the "January 2022 Will."  The will devised specific property to the Son and the Decedent's siblings and exercised the Decedent's power of appointment over the Trust's remaining 25% in favor of her residuary estate, which passed equally to her siblings.  In other words, the Son would take 75%, and the Siblings would take 25%, of the Trust assets.  The will provided death taxes "on property not passing under my Will shall be apportioned to and paid from such property by those succeeding to such property . . . ."  The will further provided that distributions would be made "after the payment of Death Taxes and Administrative expenses."

In mid-2022, the Decedent and her former husband agreed to modify their separation agreement.  Consistent with this agreement, they transferred the Trust assets to a newly-formed holding company.  The holding company's Class B membership units were assigned to the Decedent outright.  The contractual stipulation required the Decedent to provide, by will or otherwise, that the Son receive at least 75% of the holding company's Class B units of at the Decedent's death.[2]

---

[1] As explained below, we summarily affirm as to the question of whether the will was validly executed under section 732.502, Florida Statutes (2022).

[2] Note that the January 2022 Will, in effect at the time of the mid-2022 contract, did not address the newly-created holding company interests, and so those interests would pass to the Siblings under that will's residuary clause, unless and until it was modified.

From August through December 2022, the Decedent's physical and mental health deteriorated. She experienced repeated hospitalizations, and medical records and witness testimony described her as confused, disoriented, lethargic, and cognitively impaired. She was discharged to home hospice on December 4, 2022.

On December 5, 2022, the Decedent executed a new will, which we will call the "December 2022 Will." It was substantively identical to the January 2022 Will, with the exception that it devised 75% of the holding company's Class B membership interests in to the Son. In other words, 75% of the holding company assets would pass to the Son, and 25% to the Siblings. The new will also directed the death tax provision with respect to the Son's devise be apportioned and paid at the marginal rate, and added provisions governing the holding company's administration.

The evidence below raised substantial questions about the Decedent's testamentary capacity to execute the December 2022 Will, given the severely declined state of her mental and physical health.

The Decedent died two days after execution of the December 2022 Will.

## B. **Petition for Administration**

The Decedent is survived by her Son and three Siblings. The Decedent's December 2022 Will nominated one of the Decedent's Siblings as personal representative consistent with her prior wills.

A petition for administration seeking admission of the December 2022 Will to probate and appointment as personal representative was filed. The Son filed a caveat four days later. The same day when the caveat was filed, the court admitted the December 2022 Will to probate and issued letters of administration appointing the PR Sibling as personal representative. The Son moved to vacate, asserting lack of formal notice, and the court vacated its prior order and revoked the letters of administration.

Subsequently, the Son filed an answer and counter-petition challenging the December 2022 Will on grounds of improper execution, lack of testamentary capacity, and undue influence, and seeking appointment of a personal representative other than the personal representative initially appointed by the probate court. Thereafter, the court appointed the PR Sibling as curator.

### C. Summary Judgment

The Siblings moved for summary judgment, arguing the Son lacked standing to contest the December 2022 Will, the will was validly executed, and was not the product of undue influence. The Son withdrew his undue influence claim but opposed summary judgment, asserting standing based on alleged adverse tax consequences under the December 2022 Will. The Son did not present expert testimony or record evidence quantifying any tax difference, arguing he did not need to show he would receive more assets under the December 2022 Will to prove standing. The Son also argued that the will's execution was invalid because the Decedent lacked testamentary capacity to sign the will, and contradictory testimony from the witnesses created a genuine dispute of fact as to whether they had signed the will and self-proving affidavit in each other's presence.

The probate court ultimately granted summary judgment for the Siblings and concluded the Son lacked standing because he would not benefit from invalidation of the December 2022 Will, which the court found to be substantially and functionally identical to the Decedent's January 2022 Will except for devising the Son 75% of the holding company's interests. The court further held that the Son failed to present record evidence of any tax-related harm sufficient to establish standing.

The probate court also found prima facie evidence of formal execution under section 732.503, Florida Statutes (2022), relying on a self-proving affidavit and unrebutted testimony of the witnesses present at execution. The court further rejected the Son's argument of lack of capacity, finding the Son "alleges improper execution pursuant Section 732.502, Florida Statutes, which does not contemplate Decedent's alleged incapacity" and that "[a] testator's capacity is contemplated by Section 732.501, Florida Statutes."

The Son appealed the summary judgment order. After the appeal was filed, the probate court admitted the December 2022 Will to probate and reappointed the PR Sibling as personal representative. The Son appealed that order as well. We consolidated those appeals.

## II. Analysis

### A. Standard of Review

Our standard of review of an order granting summary judgment is de novo. *See Patient Depot, LLC v. Acadia Enters., Inc.*, 360 So. 3d 399, 406 (Fla. 4th DCA 2023); *Gromann v. Avatar Prop. & Cas. Ins. Co.*, 345 So. 3d

298, 300 (Fla. 4th DCA 2022). Florida's summary judgment standard, applied in accordance with the federal standard, provides a court shall grant summary judgment if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fla. R. Civ. P. 1.510(a).

"We also review de novo the interpretation of statutes." *Delbrouck v. Eberling*, 226 So. 3d 929, 932 (Fla. 4th DCA 2017) (citing *Duncombe v. Adderly*, 991 So. 2d 1013, 1015 (Fla. 4th DCA 2008)); *see also Westport Recovery Corp. v. Midas*, 954 So. 2d 750, 752 (Fla. 4th DCA 2007) ("Whether a party is the proper party with standing to bring an action is a question of law to be reviewed *de novo*."); *Bivins v. Rogers*, 147 So. 3d 549, 550 (Fla. 4th DCA 2014) ("A dismissal based on lack of standing raises a question of law that is reviewed *de novo*." (alteration in original) (citations omitted)); *GMAC Mortg., LLC v. Choengkroy*, 98 So. 3d 781, 781 (Fla. 4th DCA 2012) ("The review of a final order dismissing a cause of action for lack of standing is *de novo*." (alteration in original) (citations omitted)).

## B. **"Standing" to contest a will**

"Standing is the legal doctrine that defines when a litigant has a stake in a controversy sufficient to obtain judicial resolution of that controversy." *Planned Parenthood of Sw. & Cent. Fla. v. State*, 384 So. 3d 67, 89 (Fla. 2024) (Sasso, J., concurring); *see also* Black's Law Dictionary (12th ed. 2024) (defining "standing" as "[a] party's right to make a legal claim or seek judicial enforcement of a duty or right based on the party's having a sufficient interest in a justiciable controversy.").

By statute, only a person who is an "interested person" is permitted to contest administration of a will. An "interested person" is "any person who may reasonably be expected to be affected by the outcome of the particular proceeding involved . . . ." § 731.201(23), Fla. Stat. (2022).

Because the "interested person" inquiry is similar to, and draws upon, concepts from "standing," we and other courts have often referenced the concept of "standing to contest a will," or something to that effect. *See, e.g.*, *Rudolph v. Rosecan*, 154 So. 3d 381, 385 (Fla. 4th DCA 2014) ("A person's status as an 'interested person' with standing in a guardianship proceeding is dependent upon whether the person would be affected by the outcome of the proceedings."); *Bivins*, 147 So. 3d at 551 ("We agree with the trial court that the son did not have standing to request the affirmative relief of changing the residence of the ward. Instead, the statutory scheme gives any interested person, which would include the son as next of kin, the right to petition for interim judicial review. . . .");

6

*Delbrouck*, 226 So. 3d at 935 ("As an interested person, appellant had standing to contest the will."); *Agee v. Brown*, 73 So. 3d 882, 886 (Fla. 4th DCA 2011) (discussing "standing to contest" and "standing to challenge" a will); *In re Lewis' Estate*, 411 So. 2d 368, 370 (Fla. 4th DCA 1982) ("Florida has adopted a statute which grants automatic standing to any personal representative. s 731.201(21), Florida Statutes (1979)."); *see also Smith v. DeParry*, 86 So. 3d 1228, 1235 (Fla. 2d DCA 2012) ("Under the Probate Code, the term 'interested person' refers to a person's or entity's standing, i.e., the right to notice and an opportunity to be heard in a particular proceeding pending in a probate or guardianship matter.").

But as set out below, "standing" and "interested person" are distinct inquiries. We set out each inquiry below and then apply each to the facts of this case.

### 1. <u>Standing</u>

"Standing is a legal concept that requires a would-be litigant to demonstrate that he or she reasonably expects to be affected by the outcome of the proceedings, either directly or indirectly." *Shriberg v. Fla. Flooring, Inc.*, 2026 WL 60973, at *2 (Fla. 4th DCA Jan. 7, 2026) (quoting *Hayes v. Guardianship of Thompson*, 952 So. 2d 498, 505 (Fla. 2006)).

In *State v. J.P.*, 907 So. 2d 1101 (Fla. 2004), the Florida Supreme Court listed "three requirements that constitute the 'irreducible constitutional minimum' for standing":

> First, a plaintiff must demonstrate an "injury in fact," which is "concrete," "distinct and palpable," and "actual or imminent." Second, a plaintiff must establish "a causal connection between the injury and the conduct complained of." Third, a plaintiff must show "a 'substantial likelihood' that the requested relief will remedy the alleged injury in fact."

*Id.* at 1113 n.4 (citations omitted).[3]

---

[3] Justice Sasso, in her *Planned Parenthood* concurrence, recently suggested that standing jurisprudence in Florida remains messy. 384 So. 3d at 89 (Sasso, J., concurring). She explains that although "the Florida Constitution is textually distinct from the Federal Constitution because it does not contain an explicit cases and controversies clause," the "[Florida Supreme] Court has at times reflexively adopted federal standing tests without examining whether the Florida Constitution demands similar requirements," and at other times "[has] concluded that standing in Florida is less restrictive than at the federal level." *Id.* at 89–90.

## 2. **The "interested person" who has the ability to contest a will**

Pursuant to the Florida Probate Code, "[a]ny interested person, including a beneficiary under a prior will, unless barred under s. 733.212 or s. 733.2123, may commence [a proceeding to revoke the probate of a will] before final discharge of the personal representative." § 733.109(1), Fla. Stat. (2022). "A petition for revocation of probate shall state the interest of the petitioner in the estate and the facts constituting the grounds on which the revocation is demanded." Fla. Prob. R. 5.270.

Section 731.201(23) defines an interested person as "any person who may reasonably be expected to be affected by the outcome of the particular proceeding involved" and "may vary from time to time and must be determined according to the particular purpose of, and matter involved in, any proceedings." § 731.201(23), Fla. Stat. (2022); *see also Hayes*, 952 So. 2d at 507 (explaining that the definition of "interested person" requires the trial court to evaluate the nature of both the proceeding and the interest asserted).

"In a probate proceeding, a person 'may reasonably be expected to be affected by the outcome' of the proceeding if they are a beneficiary of the estate." *Christie v. Qualls*, 392 So. 3d 801, 802 (Fla. 1st DCA 2024); *see also Dean v. Bentley*, 848 So. 2d 487, 489 (Fla. 5th DCA 2003) (noting that "[i]f Bentley was the beneficiary of a valid will, he certainly would have been affected by the outcome of the probate proceedings"); *Rudolph*, 154 So. 3d at 385 (noting the "fluid nature" of who may be an "interested person"). "[W]hether a person is an 'interested person' is an element that must be established by the petitioner seeking revocation of probate." *Gordon v. Kleinman*, 120 So. 3d 120, 121 (Fla. 4th DCA 2013) (quoting *Wehrheim v. Golden Pond Assisted Living Facility*, 905 So. 2d 1002, 1006 (Fla. 5th DCA 2005)).

---

Justice Sasso suggests, going forward, "we should consider from where our standing requirements are derived" and, once decided, courts need to: "clarify the scope of any standing requirements, such as whether parties may assert both legal and factual injuries or whether only a legal injury will suffice;" "examine whether standing requirements are truly subject to waiver, or instead whether they are jurisdictional in nature"; and "provide a principled methodology to help litigants understand which tests to apply when." *Id.* at 93 (also stating "I encourage parties to critically assess these and other standing issues and present argument to this Court should the opportunity arise").

8

To be sure, the statutory "interested person" inquiry draws on concepts from standing jurisprudence. As our Supreme Court noted, "[i]n defining an 'interested person' as any person 'who may reasonably be expected to be affected by the outcome of the proceeding,' section 731.201(21) incorporates the general standing principles . . . ." *Hayes*, 952 So. 2d at 507–08; *see also Griffin v. Pearson*, 2025 WL 2088700, at *2 (Fla. 6th DCA July 25, 2025) ("[T]hough the trial court did not expressly refer to the statutory definition, its finding that Griffin lacks standing to challenge the 2012 will is tantamount to finding Griffin is not an 'interested person' under the Probate Code.").

But whether a person is an "interested person" is ultimately a merits question based on the definition set forth in the statutory text; it concerns who the legislature would permit to challenge a will in particular cases. *See Gordon*, 120 So. 3d at 121 ("whether a person is an 'interested person' is an element . . .") (quotation omitted). The "interested person" inquiry is distinct from the inquiry of whether a person has standing to appear in court—the "require[ment]" that "a would-be litigant . . . reasonably expects to be affected by the outcome of the proceedings, either directly or indirectly." *Shriberg*, 2026 WL 60973 at *2 (quotation omitted).

## C. <u>**Application to these facts**</u>

Applying this framework here, we find the trial court erred in holding both that the Son lacked standing and that he was not an "interested person."

If the Son succeeds in his challenge to the December 2022 Will, the January 2022 Will would be reinstituted. The January 2022 Will contemplated that many assets would pass to the Son through a trust. However, that trust no longer governs disposition of the bulk of the estate assets. The assets that used to be in the trust would accordingly pass to the Siblings through the January 2022 Will's residuary clause. The Son, in turn, claims he, as a beneficiary of the June 2022 contract, would have a creditor claim against the Siblings for the assets that otherwise would have passed through the trust. He also claims he would pay less taxes as a creditor under the January 2022 Will than as a legatee[4] under the December 2022 Will.

---

[4] "Legatee" means "someone who is named in a will to take personal property; one who has received a legacy or bequest." *Legatee*, Black's Law Dictionary (12th ed. 2024).

9

As to standing—the Son has shown standing under these circumstances. He has an injury-in-fact inasmuch as he would have a materially different status (creditor versus legatee) with disparate monetary consequences if he succeeds in his challenge. The patently different tax treatment of what he would pay if his challenge fails—as legatee in accordance with the tax terms dictated under the December 2022 Will—and if his challenge succeeds—as a potential creditor of assets the Siblings were to pay taxes on as the sole legatees under the January 2022 Will—obviates the need for expert testimony of the dollar figure which he expects to pay under each scenario.[5] Further, the Son has redressability inasmuch as the challenge would allow him to set aside the will. And there is causation inasmuch as the challenged will treats him differently than the previous will.

As to whether the Son is an "interested person"—whether he is actually financially better off having a (not yet adjudicated) creditor claim than he would be simply taking the assets under the December 2022 Will is not dispositive of his "interested person" status. Those are two very different circumstances (potential creditor or legatee) for the Son to be in vis-a-vis the estate, and thus he is "affected" by the outcome. That makes him an "interested person" able to challenge the will. § 731.201(23), Fla. Stat. (2022).

In *Delbrouck*, we reached a similar result. 226 So. 3d at 930. There, the decedent's son petitioned for revocation of probate, alleging lack of testamentary capacity, undue influence, and overreaching of the personal representative. *Id.* The personal representative moved for summary judgment, which the court granted. *Id.* at 932. On appeal, the decedent's son argued summary judgment was improper because "he is a substantial beneficiary under the will and a putative heir under intestacy law, making him an 'interested person' in every sense of the term." *Id.* He also argued genuine issues of material fact existed as to undue influence and testamentary capacity. *Id.*

We held the *Delbrouck* appellant—the decedent's son—qualified as an

---

[5] That the Son's creditor status is contingent on a successful outcome in a subsequent creditor claim does not deprive him of standing. A trial-within-a-trial is unnecessary to determine that claim's actual viability of that claim; it is sufficiently colorable that he has at least the bare constitutional minimum to appear in court in this case. Indeed, if it were not so colorable and were instead frivolous, the Siblings could rest easy, knowing they would take the entirety of the holding company assets under the January 2022 Will if the Son succeeds in his challenge to the December 2022 Will.

"interested person" within the meaning of section 733.109(1) (and 733.201(23)), because he was both a beneficiary under the will and an heir at law, and because he would have been affected by the outcome of the revocation petition. Specifically, a successful revocation would have subjected the personal representative to removal under section 733.504(10). *Id.* at 933. We further explained "[t]here is no requirement in the plain language of the statute that appellant prove his share of the estate would have been different if his revocation attempt succeeded." *Id.*

Here, as in *Delbrouck*, although the Son did not present evidence quantifying the precise tax benefit which he might obtain, he was not required "to prove his share of the estate would have been different if his revocation attempt succeed[s]." *Id.* He was required to prove what section 731.201(23)'s plain language and our caselaw interpreting section 731.201(23) require—that he would be "affected" by the outcome. Under the unique facts here, he showed as much.

### D. **On remand, the testamentary capacity question should proceed to trial**

The Son also raised a challenge to the Decedent's testamentary capacity to execute the December 2022 Will. The Siblings did not move for summary judgment on that question. At oral argument, both parties noted that if we reversed on the standing question, they would proceed to trial on the question of testamentary capacity.

We summarily affirm the trial court's grant of partial summary judgment on the question of whether the execution of the December 2022 Will complied with the strictures of section 732.502, Florida Statutes (2022). We write to explain the impact of this affirmance on the issues at trial on remand, and in particular the question of testamentary capacity.

The question of testamentary capacity, or a sound mind, is a separate question from whether a will is validly executed in accordance with the strictures of section 732.502. Section 732.501 provides "[a]ny person who is of sound mind and who is either 18 or more years of age or an emancipated minor may make a will." § 732.501, Fla. Stat. (2022).

> To execute a valid will, the testator need only have testamentary capacity (i.e. be of "sound mind") which has been described as having the ability to mentally understand in a general way (1) the nature and extent of the property to be disposed of, (2) the testator's relation to those who would naturally claim a substantial benefit from his will, and (3) a

11

general understanding of the practical effect of the will as executed.

*Raimi v. Furlong*, 702 So. 2d 1273, 1286 (Fla. 3d DCA 1997); *see also In re Bailey's Estate*, 122 So. 2d 243, 245 (Fla. 2d DCA 1960) (holding the same); *In re Wilmott's Estate*, 66 So. 2d 465, 467 (Fla. 1953) ("The making of a will does not depend upon a sound body but upon a sound mind.").

"Testamentary capacity is determined only by the testator's mental capacity at the time he executed his will." *Jervis v. Tucker*, 82 So. 3d 126, 128 (Fla. 4th DCA 2012) (quoting *Hendershaw v. Estate of Hendershaw*, 763 So. 2d 482, 483 (Fla. 4th DCA 2000)); *see also Skelton v. Davis*, 133 So. 2d 432, 435 (Fla. 3d DCA 1961) ("The principle of law that testamentary capacity is to be judged solely at the time of the execution of the will is irrefragable and no authority need be cited.").

Valid execution, provided by section 732.502, is a separate concept that involves compliance with statutory procedural formalities for creating a legally enforceable will.[6] To properly execute a will, it must be signed at the end by the testator and in the presence of two witnesses who witness the execution (or an acknowledgement by the testator) in the presence of each other. *See* § 732.502(1), Fla. Stat. (2022); *see also Allen v. Dalk*, 826 So. 2d 245, 247 (Fla. 2002) ("A testator must strictly comply with these statutory requirements in order to create a valid will."); *Manson v. Hayes*, 539 So. 2d 27, 28 n.2 (Fla. 3d DCA 1989) (noting that "[t]he purpose of the statute is to assure not only that the signature on the will is that of the testator, but to provide reasonable assurance of the circumstances under which the signature was affixed to the document"); *In re Swanson's Estate*, 397 So. 2d 465, 466 (Fla. 2d DCA 1981) (explaining that "[e]ach of the subsections [of section 732.502] deals with some procedural formality required for a valid execution" and "does not purport to deal with substantive considerations such as mental capacity or undue influence").

Both requirements—testamentary capacity and proper execution—must be satisfied independently for a will to be valid, and a will can fail for lack of either element even if the other is present. *See, e.g., Tendler v. Johnson*, 332 So. 3d 521, 524 (Fla. 4th DCA 2021) ("The probate of a will signifies that a will was properly executed and witnessed, and that the testator had testamentary capacity when executing the will . . . [t]he use of the word 'validity' in chapter 733 pertains to the compliance with the technical requirements of execution—signatures and witnesses—and to

---

[6] Again, this is the question on which the trial court granted partial summary judgment, which we summarily affirm.

the testamentary capacity of the testator—the required factors for a will to be probated."); *Blits v. Blits*, 468 So. 2d 320, 321 (Fla. 3d DCA 1985) (separately assessing issues of testamentary capacity and proper execution).

Because we summarily affirm on the issue of whether execution according to the strictures of Section 732.502 was valid, on remand, the parties should proceed to trial on the separate question of testamentary capacity.

## III.　**Conclusion**

We reverse the trial court's grant of summary judgment on the question of standing and "interested person" status. The Son meets the threshold for standing and is an "interested person" with the statutory ability to challenge the December 2022 Will. We summarily affirm the trial court's grant of partial summary judgment on the question of whether the December 2022 Will was executed in accordance with the strictures of section 732.502, and remand for trial on the question of whether the Decedent lacked the testamentary capacity to execute the December 2022 Will, and any other issues that may be appropriately raised by the parties that are not inconsistent with this opinion.

In the consolidated appeal, the Son argues that if we reverse the summary judgment order, we should also reverse the orders admitting the December 2022 Will to probate and appointing the personal representative. These orders were entered after summary judgment. In light of our reversal above, we also reverse the orders admitting the December 2022 Will to probate and appointing the PR Sibling as personal representative.

*Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.*

MAY and CONNER, JJ., concur.

\*　　　\*　　　\*

***Not final until disposition of timely-filed motion for rehearing.***